**Michael L. GLASER d/b/a St. Vrain Communications Co., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Longmont Broadcasting Corporation, Amador S. Bustos, Western Cities Broadcasting, Inc., Intervenors.**

No. 92–1515.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 10, 1993.

Decided April 15, 1994.

Michael L. Glaser, pro se.

John P. Greenspan, Counsel, F.C.C., argued the cause for appellee. With him on the brief were Renee Licht, Acting Gen. Counsel, FCC, at the time the brief was filed, Daniel M. Armstrong, Associate General Counsel, FCC, and David Silberman, Counsel, FCC. Sue Ann Kanter, Counsel, FCC, entered an appearance.

Before GINSBURG and RANDOLPH, Circuit Judges, and WILL, Senior District Judge.*

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

St. Vrain Communications Co. appeals from a decision of the Federal Communications Commission denying its application for an FM station license, which it filed in competition with a license renewal application. ·The FCC rejected St. Vrain's application because it lacked a site certification, in violation of the tender review requirements of the agency's "hard look" policy. Because the FCC did not give adequate notice that it would apply the "hard look" policy in comparative renewal proceedings, we reverse the agency's decision.

## I. Background

Western Cities Broadcasting, Inc. applied to renew its license for radio station KQKS–FM in Longmont, Colorado. One day before the filing window closed, St. Vrain filed a mutually exclusive application to construct a new radio station in Longmont. A few days later, when St. Vrain realized that it had inadvertently left out the page on which it showed that it had reasonable assurance that a transmitter site for its proposed station was available, it attempted to file a corrective amendment. The Mass Media Bureau, however, disregarded the amendment as untimely and, pursuant to the agency's "hard look" processing standards for FM applications, returned St. Vrain's application as "unacceptable for tender" because not "substantially complete."

St. Vrain petitioned the Bureau for reconsideration and reinstatement of its application *nunc pro tunc* on the grounds, among others, that the "hard look" policy is not applicable to an FM application that is competitive, i.e., mutually exclusive, with a renewal application, and that it would violate § 553 of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, for the FCC to apply the policy to such an application without prior notice. The Bureau denied reconsideration, stating that the FCC had never suggested that the "hard look" policy would not apply to an application filed in a comparative renewal proceeding, and that application of the "hard look" policy "to all commercial FM applications—including those filed in comparative renewal proceedings—is entirely consistent with and furthers the Commission's stated goals." *In re Applications of Western Cities Broadcasting, Inc., et al.*, 5 FCC Rcd. 6177, 6178 (1990). The Commission denied St. Vrain's petition for review for the same reasons, adding, without citation to any par-

---

* The Honorable Hubert L. Will, Northern District of Illinois, sitting by designation pursuant to 28 U.S.C. § 294(d).

ticular case, that "[w]e have uniformly made the 'hard look' applicable to new stations and comparative renewal cases." *In re Application of Michael L. Glaser d/b/a Saint Vrain Communications Co.,* 7 FCC Rcd. 5971 (1992).

## II. Analysis

The FCC adopted stringent tender review requirements as part of its "hard look" policy in 1985; its purpose was to expedite its processing of applications, both the great backlog already filed and the large number of additional applications about to be filed for new FM allocations. *Processing of FM and TV Broadcast Applications,* 50 Fed.Reg. 19936 (May 13, 1985) (*FM Applications*). Its public interest goal was to "ensure that an expansive menu of programming alternatives is made rapidly available to the American public." *Id.* at 19,937. Accordingly, the FCC established "window filing" and "first come/first serve [sic]" procedures to govern "currently vacant channels in the Commercial FM ... Tables of Allotments or for modifications to existing facilities," as well as "allotments added by future Commission orders." *Id.* at 19,936–37.

In an appendix to *FM Applications* the agency stated that, "in conjunction with the implementation of the new 'window' and 'first come, first serve' processing procedures," it was "adopting a new policy with respect to the definition and treatment of applications that are defective or not substantially complete when filed." The Commission explained:

> Expedition of processing in the face of the possibility of a large increase in commercial FM applications compels us to shift to the beginning of the process some of the application checks previously made later in the process. This shift may well result in a loss of filing status for a returned application that it otherwise would have retained under the previous processing procedures. Such an outcome cannot be avoided if we are to achieve the benefits of the new window and first come, first serve processing procedures.

*Id.* at 19945 (Appendix D). The agency then set forth the criteria it would use to deter-

mine whether an application is substantially complete, including the requirement (pursuant to which it returned St. Vrain's application) that the applicant provide "reasonable assurance" of site availability, as well as the name and address of the site owner or its agent. *Id.* at 19945–46.

St. Vrain argues that neither in *FM Applications* nor in Appendix D thereto, nor anywhere else for that matter, did the FCC ever put the public on notice that an application to displace a renewal applicant would be subject to the strict tender review requirements of Appendix D. We agree.

There can be no doubt of the FCC's authority to impose strict procedural rules in order to cope with the flood of applications it receives or expects to receive. As we said in *Salzer v. FCC,* 778 F.2d 869, 875 (D.C.Cir. 1985), however, "the *quid pro quo* for stringent acceptability criteria is explicit notice.... The less forgiving the FCC's acceptability standard, the more precise its requirements must be."

Here the FCC argues that it provided clear notice when it stated in Appendix D itself that "an application must include a site certification meeting certain specifications" and that "if the site availability certification was not submitted on time, 'the application will be returned without further notice.'" That statement is not responsive, however, to the question raised by St. Vrain: to what type(s) of application(s) did it refer when it said "an application"? See *Ridge Radio v. FCC,* 292 F.2d 770, 773 (D.C.Cir.1961) ("The Commission is not required in a notice to phrase its [application] cut-off provision so broadly as to encompass all the rule itself permits. It may validly do less by the notice." The rule, however, "is restricted ... by the scope of the notice.").

Nowhere in *FM Applications* does the FCC suggest that the stringent tender review standards of Appendix D might apply in a comparative renewal proceeding, as opposed to a proceeding involving competing applications for a vacant allotment. Indeed, the context suggests just the opposite. As we have seen, the window filing and "first come/first serve" procedures announced in

*FM Applications* were developed in order to cope with a specific problem, *viz.* an existing backlog and an expected influx of applications for vacant channels. Concomitantly, the strict tender review standards were described as "critical to making the window filing and 'first come/first serve' process work smoothly and with minimal delay in processing large numbers of applications." 50 Fed.Reg. at 19,940. No mention is made anywhere in the final rule document or in Appendix D thereto of comparative renewal proceedings—which had not occasioned a flood of applications and do not involve a vacant channel on which the public is deprived of service during the pendency of lengthy FCC proceedings.

The FCC argues that by the terms of Appendix D the strict tender review requirements apply to all applications for new commercial FM stations—i.e., when it referred to "an application" it made no exception—and St. Vrain's application was for a new commercial FM station, albeit not on a vacant channel. Again, however, the rule expressly stated that the window filing and "first come, first serve" procedures would apply to applications for vacant channels and to modifications to existing channels; St. Vrain asserts, and the FCC does not deny, that those procedures do not apply to a comparative renewal proceeding, which is what St. Vrain sought to enter.

The FCC next points out that "applications for modifications to existing commercial FM stations are also subject to the 'hard look' tenderability review," although they do not involve vacant channels. In *FM Applications,* however, the FCC gave express notice that the new window filing, "first come, first serve," and "hard look" policies would apply to modification applications, in order to make modification standards "clear, certain and workable." 50 Fed.Reg. at 19938. Far from offering a comparable explanation with regard to comparative renewal proceedings, the order makes no mention of them whatsoever.

The FCC also maintains that its decisions in *K & L Communications, Inc.,* 46 Rad. Reg.2d (P & F) 356 (1979) and *City Light Communications, Inc.,* 4 FCC Rcd. 1676 (MMB 1989), both of which involved TV licenses, put St. Vrain on notice that the agency has long had a policy of treating an application that is mutually exclusive with a renewal application in the same manner as it treats an application for a vacant channel. In *K & L* the Commission observed generally that "neither the [Communications] Act nor [the agency's] rules provides for applying acceptance criteria to construction permit applications specifying the facilities of a license renewal applicant different from the criteria applied to other construction permit applications." 46 Rad.Reg.2d at 357. In 1985, however, the FCC changed the rules by promulgating new acceptance criteria (i.e., in *FM Applications*) for applications for vacant FM channels and modifications. When the FCC thereafter referred approvingly to *K & L* in *City Lights,* the proposition that the acceptance criteria for applications challenging a renewal are the same as for other applications was apparently true with respect to TV but not with respect to FM. Thus, after *FM Applications* neither *K & L* nor *City Lights* would have put even the most perspicacious reader on notice that the stringent "hard look" tender review standards would be applied in a comparative renewal proceeding for an FM station.

In its order denying St. Vrain's application for review, the FCC claimed that since adopting the "hard look" policy in *FM Applications* it has "uniformly" applied the "substantially complete" tenderability standard to comparative renewal proceedings. 7 FCC Rcd. at 5971 n. 4. The only authority that the FCC cited, however, is not a precedent in which it applied the standard but rather a rulemaking decision concerning financial certification requirements, in which it decided that:

> in order to deter further financially unqualified applicants from participating in the application process, ... broadcast applications will now be returned as "not substantially complete" if the requisite financial certification is not made in the application. Specifically, if an applicant fails to certify in the application that it is financially qualified, ... its application will be returned as unacceptable or nontenderable. . . .

*Revision of Application for Construction Permit for Commercial Broadcast Station,* 4 FCC Rcd. 3853, 3859 n. 71 (1989). We are at a complete loss to understand how the FCC could think that this decision could cure the lack of notice provided to renewal challengers regarding the scope of Appendix D. It makes clear only that commercial FM applications will, apparently without exception, be subject to strict review with regard to the requisite financial certification. That strict review in one regard extends to all applications, presumably including applications filed in a comparative renewal proceeding, simply does not imply that strict review extends to all applications in all regards; and therefore it can hardly serve as notice to that effect.

### III. Conclusion

The FCC never gave notice that the "hard look" policy it adopted in *FM Applications* would be applied to an application filed in competition with a renewal application. We therefore reverse the FCC order denying St. Vrain's application for review and remand the case to the FCC for reinstatement of St. Vrain's application *nunc pro tunc.*

*So ordered.*