**JEM BROADCASTING COMPANY, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**Gayla Joy Hendren, Intervenor.**

**No. 93–1099.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 14, 1994.

Decided May 6, 1994.

As Corrected June 16, 1994.

Roy F. Perkins, Jr., Washington, DC, argued the cause and filed the briefs for appellant.

Sue Ann Kanter, Counsel, Federal Communications Commission, Washington, DC, argued the cause for appellee. With her on the brief were Renee Licht, Acting Gen. Counsel, Federal Communications Commission, and Daniel M. Armstrong, Associate

Gen. Counsel, Federal Communications Commission, Washington, DC.

On the brief for intervenor Gayla Joy Hendren was Julian P. Freret, Washington, DC.

Before: MIKVA, Chief Judge, EDWARDS and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In July 1988, appellant JEM Broadcasting Company, Inc. ("JEM") submitted a license application for a new FM station in Bella Vista, Arkansas. The Federal Communications Commission ("FCC" or "Commission") accepted JEM's application for filing, but determined upon further review that JEM had provided inconsistent geographic coordinates for its proposed transmitter site. Unable to resolve the inconsistency from the application papers, the FCC, acting pursuant to its "hard look" processing rules, dismissed JEM's application without providing JEM an opportunity to correct its error.

JEM challenges the Commission's summary dismissal of its application on several grounds. First, JEM contends that the so-called "hard look" rules cannot be applied against it because the rules were promulgated without notice and comment in violation of the Administrative Procedure Act, 5 U.S.C. § 553 (1988) ("APA"). This claim is meritless for two reasons: JEM's challenge is untimely, and, in any event, notice and comment rulemaking was not required. Second, JEM asserts that it was entitled to a hearing on its application under the Communications Act of 1934, 47 U.S.C. §§ 309(d)–(e) (1988), and that the summary dismissal deprived it of due process under the Fifth Amendment. Because we find that these contentions also lack merit, we affirm.

## I. BACKGROUND

### A. Adoption of the "Hard Look" Rules

The FCC allotted 689 new commercial FM channels in early 1985. Anticipating a flood of license applications in response to the allotments, the Commission promulgated stringent application processing rules de-signed to streamline the agency's review process and to weed out hastily prepared, incomplete applications. *See Processing of FM and TV Broadcast Applications, Report & Order,* 50 Fed.Reg. 19936 (May 13, 1985) (*"FM Processing Rules"*). The "hard look" rules established a fixed filing period—known as a "window"—for all applications requesting use of a particular channel. *See id.* at 19940–41. Applications filed within the window period would be evaluated for "substantial completeness"; those meeting this standard would be accepted for tender and placed on publicly released Notices of Tenderability. Following release of the public notice, applicants were allowed thirty days in which to amend or perfect their applications "at will and as a matter of right." *Id.* at 19941.

Applications that did not include the prescribed information by the close of the window were considered "unacceptable for tender" and were returned without opportunity for filing a curative amendment. *See id.* at 19946 (Appendix D). Moreover, if any data were incorrect or inconsistent, and the "the critical data [could not] be derived or the inconsistency resolved within the confines of the application and with a high degree of confidence," the application was deemed unacceptable for tender and would be dismissed with no opportunity to cure the defect. *Id.* The Commission clearly warned future applicants of the consequences of failing to provide the prescribed information:

> If the application is returned during the initial check as not sufficient for tender, we will not permit the applicant to remedy the defect and have its resubmitted application accepted *nunc pro tunc* in order to be grouped with other applications filed by a window closing date....

*Id.* The Commission also warned that "if an incomplete application has been inadvertently accepted for tender, it will be stripped of its file number and returned; it may not be perfected to pass tender review." *Id.* at 19941. JEM's application met this latter fate.

In Appendix D to the *FM Processing Rules,* the Commission specified the indis-

pensable components of a "substantially complete" license application. As relevant here, Appendix D required all applications to include the location of the proposed transmitter, specified by geographic coordinates in the applicant's engineering exhibit, and identified on a map as well. *See id.* at 19945 (Appendix D). The Commission explained that the coordinates were needed "to determine the distances from the proposed site to other proposed or existing broadcast facilities and to the community of license, ... [to] determin[e] whether protection must be afforded to Commission monitoring facilities and to radio quiet zones, [to] mark the center of the 'blanketing' area, and ... [to analyze] environmental effects and electromagnetic effects on other, nearby communications facilities." *Id.* (citations omitted). The map showing the transmitter site would enable the staff "to verify the coordinates of the proposed site, the presence of other, nearby communications facilities and of obstructing terrain features, and the ground elevation of the transmitter site." *Id.* (citation omitted).

*B. JEM's Application*

JEM filed its application for the Bella Vista, Arkansas station on July 14, 1988. After initially accepting JEM's application for filing, the staff of the Mass Media Bureau discovered that the coordinates provided for JEM's proposed transmitter site, 36° 13′ 10″, were inconsistent with the site marked on JEM's map, which, the staff determined, was 36° 15′ 10″. The Bureau was unable to resolve the inconsistency from the face of JEM's application, and concluded that the discrepancy made it "impossible to determine the veracity of the site availability certification, the environmental impact statement, or the information supplied for FAA approval." *In re Gayla Joy Hendren,* 5 FCC Rcd 5440, 5440 ¶ 5 (M.M.B.1990). In accordance with the "hard look" rules, the Bureau dismissed JEM's application as having been "inadvertently accepted for filing." *Id.*

JEM petitioned for reconsideration, acknowledging that it had provided incorrect coordinates, but contending that other information in its application allowed the staff to determine the correct site. The Commission denied the petition, finding that the engineering exhibits and FAA approval to which JEM referred did not resolve the discrepancy because the wrong coordinates might have been used to generate those exhibits and to obtain FAA approval. *See In re JEM Broadcasting Company, Inc.,* 7 FCC Rcd 4324, 4325–26 ¶¶ 8–10 (1992). The FCC further explained that it would only look to information outside an application to resolve a conflict in coordinates when an applicant intended to use an existing licensed tower; in such cases, the Commission could take official notice of the information in its records to verify the coordinates for the tower and thus resolve the inconsistency. *See id.* at 4326 ¶ 14.

JEM petitioned for reconsideration, briefly raising the three arguments advanced in this petition for review. The Commission again denied reconsideration, finding all of JEM's arguments to be without merit. With respect to the promulgation of the "hard look" rules, the Commission observed both that it had "provided adequate notice that the scope of the rulemaking contemplated possible changes to the cut-off rule for amendments to applications," and that the limit on curative amendments was a procedural rule exempt from the APA's notice and comment requirements. *In re JEM Broadcasting Company, Inc.,* 8 FCC Rcd 77, 77 ¶ 3 (1992). Next, the FCC ruled that "Section 309 of the Communications Act does not prevent the Commission from adopting measures to provide for orderly processing, nor does it require the Commission to hold a hearing on an application which does not comply with the Commission's rules." *Id.* at 77 ¶ 4. Finally, the agency concluded that its dismissal of JEM's application "complied with all due process requirements" and did not "amoun[t] to a governmental taking of its valuable property." *Id.* (citations omitted).

II. DISCUSSION

In this appeal, JEM renews the contentions advanced in its petition for reconsideration, namely, that the "hard look" rules were promulgated without notice and comment, in violation of the APA; that the Communications Act entitled JEM to a hearing before dismissal of its application; and that the

summary dismissal violated JEM's due process rights. We address these arguments in turn, pausing first to consider the Commission's claim that the notice and comment challenge is untimely.

## A. The Timeliness of JEM's Challenge to the "Hard Look" Rules

■ Section 2344 of the Hobbs Act provides that any party "aggrieved" by a "final [agency] order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies." 28 U.S.C. § 2344 (1988). JEM attempts to avoid the stricture of the limitations period on two grounds. First, while conceding that direct petitions for review of an agency order are governed by the 60–day limitations period, it claims that indirect attacks on a rule's validity in the context of an adjudicatory proceeding are not so governed. Second, JEM urges that it could not have petitioned for direct review of the "hard look" rules within the statutory period because it was not then an aggrieved party. As we explain below, the limitations period applies in this case, and JEM's notice and comment challenge must be rejected as untimely.

JEM is correct in arguing that the statutory limitations period is not a rule of inflexible application. Our cases have identified two variables that may affect its applicability: (1) whether the challenge to a particular rule is substantive or procedural; and (2) whether the challenge arises directly via petition for amendment or rescission of the rule, or whether it arises indirectly as a defense to an agency enforcement action. *See generally NLRB Union v. FLRA*, 834 F.2d 191, 195–97 (D.C.Cir.1987) (summarizing circuit law with respect to various types of challenges). JEM's appeal, however, presents only one of the possible permutations: an attack on the *procedural genesis* of the "hard look" rules in the context of an *enforcement action*. Although both parties point to supportive language in our prior cases, it appears that we have never squarely considered whether the 60–day limitations period bars an attack of this type. We hold today that it does.

The FCC appears to consider dispositive our *NLRB Union* decision, in which, summarizing the law of the circuit, we said that:

[a] petitioner's contention that a regulation suffers from some *procedural* infirmity, such as an agency's unjustified refusal to allow affected parties to comment on a rule before issuing it in final form, will not be heard outside of the statutory limitations period.

*Id.* at 196 (emphasis in original). Although not so limited, that statement of the law in *NLRB Union* was cited in connection with a case in which a party sought judicial review by "petition[ing] the agency for amendment or rescission of the regulations and then [appealing] the agency's decision." *Id.* In this respect, *NLRB Union* restated our unequivocal holding in *Natural Resources Defense Council v. NRC*, 666 F.2d 595 (D.C.Cir. 1981), to the effect that a party could not

do indirectly what it is forbidden by statute from doing directly—that is, ... seek review of the procedure by which the [regulations] were promulgated, even though it could have but did not seek direct review thereof, by simply raising its objections in a petition for rulemaking and seeking direct review of the order denying the petition.

*Id.* at 601–02 (footnote omitted). Thus, both *Natural Resources Defense Council* and *NLRB Union* speak directly to situations in which a petitioner seeks a "back door" to judicial review via petition for amendment or rescission of the offending regulations after the period for direct review has elapsed. *See id.* at 603 (holding applies to "those against whom the agency is not proceeding to enforce the regulation"); *see also Montana v. Clark*, 749 F.2d 740, 744 (D.C.Cir.1984), *cert. denied*, 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985) (construing *Natural Resources Defense Council*). These cases are not directly on point here, but only because JEM has challenged the "hard look" rules as an affirmative defense to the FCC's application of those rules to JEM's detriment. This, however, is a difference without meaning.

Although *NLRB Union* and *Natural Resources Defense Council* arose in a context

different from this case, the relevant principle enunciated in those cases carries equal force here. JEM does not meaningfully distinguish this authority, as it relies on an inapposite line of cases to support its argument that its claim is timely. For example, JEM cites *Functional Music, Inc. v. FCC,* 274 F.2d 543, 546 (D.C.Cir.1958), *cert. denied,* 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959), a case in which we allowed a petitioner to challenge the *substantive* validity of an FCC rule in an adjudicatory action brought more than 60 days after the rule's promulgation. But JEM does not claim in this case that the "hard look" rules are unconstitutional, that they exceed the scope of the FCC's substantive authority, or, as was the case in *Functional Music,* that the rules are premised on an erroneous interpretation of a statutory term. Thus, *Functional Music* is inapplicable. "[Since] *Functional Music,* this court has repeatedly distinguished indirect attacks on the substantive validity of regulations initiated more than sixty days after their promulgation from like attacks on their procedural lineage." *NLRB Union,* 834 F.2d at 195 (citation omitted). *See, e.g., Geller v. FCC,* 610 F.2d 973, 977–78 (D.C.Cir.1979) (*per curiam* ).

We conclude that the aforecited rule stated in *NLRB Union* and *Natural Resources Defense Council* is equally applicable to cases of the type presented here. Thus, challenges to the *procedural lineage of agency regulations,* whether raised by direct appeal, by petition for amendment or rescission of the regulation or as a defense to an agency enforcement proceeding, will not be entertained outside the 60–day period provided by statute. The policies underlying Congress' adoption of the limitations period strongly support this result. As we have noted before, Congress has "determined that the agency's interest generally lies in prompt review of agency regulations," and "[w]e accord heavy weight to that view." *Mountain States Tel. & Tel. Co. v. FCC,* 939 F.2d 1035, 1040 (D.C.Cir. 1991) (citation and quotation omitted). We place a high value on finality in administrative processes, for finality "conserv[es] administrative resources and protect[s] the reliance interests of regulatees who conform their conduct to the regulations." *Natural*

*Resources Defense Council,* 666 F.2d at 602. Accordingly, our baseline standard long has been that statutory limitations on petitions for review are "jurisdictional in nature," *id.,* and may be enlarged by this court only in "a limited number of exceptional situations." *Raton Gas Transmission Co. v. FERC,* 852 F.2d 612, 615 (D.C.Cir.1988). A procedural challenge to agency rules does not constitute such an exceptional situation.

In a further effort to circumvent the limitations period, JEM argues that it would have lacked standing to file a timely petition for review because it was not "aggrieved" by the "hard look" rules at the time of their issuance. Indeed, JEM claims that no party could have known whether the rules applied to it, and thus been aggrieved, unless and until the Commission actually dismissed a defective application under the rules. *See* JEM Reply Brief at 10. We disagree. Of course, only parties whose license applications actually contain certain errors or omissions will suffer the concrete *effects* of the "hard look" rules, but that does not make the rules any less *applicable* as a general matter to all potential FCC license applicants. By JEM's logic, virtually no agency rules *ever* could be reviewed by timely petition, since rules, by definition, must have prospective application. *See* 5 U.S.C. § 551(4) (1988) (defining "rule" to mean "agency statement of general or particular applicability and future effect"). Instead, all challenges would have to arise as a defense to an enforcement proceeding, and this clearly is not the law. *See, e.g., NLRB Union,* 834 F.2d at 195–96.

Some rules will no doubt defy review upon promulgation for lack of "ripeness." *See Better Government Ass'n v. Department of State,* 780 F.2d 86, 95–96 (D.C.Cir.1986) (discussing application of ripeness doctrine). But this does not mean that affected parties will lack standing to challenge a rule upon promulgation. *See, e.g., Webb v. Department of Health & Human Servs.,* 696 F.2d 101 (D.C.Cir.1982) (although case dismissed for lack of ripeness, plaintiff's standing is not questioned); *Eagle–Picher Indus., Inc. v. EPA,* 759 F.2d 905 (D.C.Cir.1985) (same). And the *possibility* that a rule may not be

ripe for review does not excuse an untimely petition. *See Eagle–Picher*, 759 F.2d at 909.

■ In a case of this sort, neither standing nor ripeness issues are of significant concern. We have held unequivocally that when a party complains of an agency's failure to provide notice and comment prior to acting, it is that failure which causes "injury"; and interested parties are "aggrieved" by the order promulgating the rules. *See Natural Resources Defense Council*, 666 F.2d at 601. Moreover, the failure to provide notice and comment is a ground for complaint that is or should be fully known to all interested parties at the time the rules are promulgated. *See id.* at 602–03. Accordingly, we hold that any person or entity within the class affected by the "hard look" rules, *i.e.* actual or potential license applicants, would have been "aggrieved" within the meaning of section 2344 at the time the rules were promulgated, and thus would have had standing to challenge the procedural lineage of the "hard look" rules by direct petition for review thereof. And, had such a challenge been raised in a timely fashion, there is no doubt that the matter would have been ripe for review.

We recognize that as a result of our holdings today, some parties—such as those not yet in existence when a rule is promulgated—never will have the opportunity to challenge the procedural lineage of rules that are applied to their detriment. In our view, the law countenances this result because of the value of repose. "Strict enforcement of the [statutory] time limit is necessary to preserve finality in agency decisionmaking and to protect justifiable reliance on agency rules." *Raton Gas*, 852 F.2d at 615. Of course, under our established law, the result might differ if it could be shown that *no* party ever had adequate opportunity to challenge a particular agency action. Thus, we have recognized exceptions to the limitations period when agency action fails to put aggrieved parties on reasonable notice of the rule's content, or when such action remains unripe for judicial review throughout the statutory review period. *See Eagle–Picher*, 759 F.2d at 911–15; *RCA Global Communications, Inc. v. FCC*, 758 F.2d 722, 730 (D.C.Cir.1985). In this instance, however,

JEM cannot deny that the FCC's failure to conduct notice and comment rulemaking was an immediately obvious fact that, as we hold, was subject to immediate challenge by any number of then-existing would-be license applicants. The mere fact that JEM, in particular, had no opportunity to challenge the procedural provenance of the "hard look" rules within the statutory period is of no moment. Accordingly, we reject JEM's arguments and hold that the instant challenge to the "hard look" rules is untimely.

*B. Procedural Exception to Notice and Comment Requirement*

■ Looking past the threshold question of timeliness, the parties also dispute on the merits whether notice and comment rulemaking was required in the instant case or whether, as the Commission argues, the APA's exemption for procedural rules applies. Our conclusion that notice and comment was not mandated by the APA is an alternative basis for our judgment in this case.

■ The APA provides that "rules of agency organization, procedure, or practice" are exempt from the general notice and comment requirements of section 553. 5 U.S.C. § 553(b)(A) (1988). Although in applying this provision we have struggled with the distinction between "substantive" and "procedural" rules, we find the instant application to be straightforward. Our oft-cited formulation holds that the "critical feature" of the procedural exception "is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C.Cir.1980). *See also American Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C.Cir.1987); *Neighborhood TV Co. v. FCC*, 742 F.2d 629, 637 (D.C.Cir.1984). "Of course, procedure impacts on outcomes and thus can virtually always be described as affecting substance, but to pursue that line of analysis results in the obliteration of the distinction that Congress demanded." *Air Transport Ass'n of Am. v. Department of Transp.*, 900 F.2d 369, 383 (D.C.Cir.1990)

(Silberman, J., dissenting). *See also American Hosp. Ass'n,* 834 F.2d at 1047; *Neighborhood TV,* 742 F.2d at 637. The issue, therefore, "is one of degree," and our task is to identify which substantive effects are "sufficiently grave so that notice and comment are needed to safeguard the policies underlying the APA." *Lamoille Valley R.R. Co. v. ICC,* 711 F.2d 295, 328 (D.C.Cir.1983). *Accord Neighborhood TV,* 742 F.2d at 637 (not every interest "qualifies" for notice and comment).

In this case, JEM challenges so much of the "hard look" rules as deprives license applicants of the opportunity to correct errors or defects in their filings and submit the applications *nunc pro tunc.* JEM cannot deny, of course, that the Commission always has required applications to be complete in all critical respects by *some* date or suffer dismissal; and the Commission argues that its new rules simply "shift[ed] to the beginning of the process some of the application checks previously made later in the process." *FM Processing Rules,* 50 Fed.Reg. at 19945 (Appendix D). Although we do not think the instant rule change can be dismissed quite so glibly—after all, the previous regime gave applicants notice of errors and a window for redress—we conclude that a license applicant's right to a free shot at amending its application is not so significant as to have required the FCC to conduct notice and comment rulemaking, particularly in light of the Commission's weighty efficiency interests. The APA's procedural exception embraces cases, such as this one, in which the interests "promoted by public participation in rulemaking are outweighed by the countervailing considerations of effectiveness, efficiency, expedition and reduction in expense." *Guardian Federal Savings & Loan Ass'n v. FSLIC,* 589 F.2d 658, 662 (D.C.Cir.1978), quoted in *American Hosp. Ass'n,* 834 F.2d at 1045.

When the FCC adopted the "hard look" rules, it had recently allotted almost 700 new FM stations and expected to receive thousands of applications in response. "At that time, the Commission was receiving a high percentage of carelessly prepared and speculative applications and the staff's acceptance

of curative amendments was causing significant delays in processing." *In the Matter of Amendment of Part 73 of the Commission's Rules to Modify Processing Procedures for Commercial FM Broadcast Applications,* 7 FCC Rcd 5074, 5074 ¶ 2 (1992) (summarizing development of "hard look" rules). The Commission recognized that the "hard look" rules might have harsh effects on applicants, but determined that the public interest in receiving new service as quickly as possible would be better served by a more streamlined review process, and that such a benefit outweighed the cost of the new rules. *See id.* at 5074 ¶ 3; *FM Processing Rules,* 50 Fed.Reg. at 19937. The critical fact here, however, is that the "hard look" rules did not change the *substantive standards* by which the FCC evaluates license applications, *e.g.,* financial qualifications, proposed programming, *and transmitter location.* This fact is fatal to JEM's claim. *Compare Reeder v. FCC,* 865 F.2d 1298, 1305 (D.C.Cir.1989) *(per curiam )* (notice and comment required for rules that changed substantive criteria for evaluating station allotment counterproposals).

We think the "hard look" rules fall comfortably within the realm of the "procedural" as we have defined it in other cases. In *Ranger v. FCC,* 294 F.2d 240 (D.C.Cir.1961), a case almost identical to this one, the FCC established, without notice and comment, a "cut-off" date by which all applications had to be filed; like JEM, the appellant in *Ranger* filed an incomplete application. Although the FCC returned the application before the expiration of the window period, the appellant did not have sufficient time to amend and refile. We held that the rule was procedural, even though "failure to observe it might cause the loss of substantive rights," and that cut-off was a reasonable method of dealing with the Commission's need to establish a terminal point beyond which applicants would not be entitled to a comparative hearing. *Id.* at 244.

*Lamoille Valley* also supports our decision. In that case, the Interstate Commerce Commission ("ICC") issued a rule shortening from 90 to 60 days the period in which competing railroads could file applications re-

**328**

sponding to a proposed merger. In finding that rule to be "definitely at the procedural end of [the procedural/substantive] spectrum," we held that

> [w]hen a rule prescribes a timetable for asserting substantive rights, we think the proper question is whether the time allotted is so short as to foreclose effective opportunity to make one's case on the merits.

*Lamoille Valley,* 711 F.2d at 328.[1] In this case, the "hard look" rules provided interested parties at least 30 days from the effective date of any Commission order allotting a new channel in which to file a substantially complete application. *FM Processing Rules,* 50 Fed.Reg. at 19941. We believe that even though the rules deny applicants the right to correct their applications, the 30–day filing window provides a meaningful opportunity for compliance and is not an "extreme procedural hurdle[ ]" that required notice and comment. *Lamoille Valley,* 711 F.2d at 328.

Finally, seizing on another aspect of our law in this area, JEM argues that we cannot find the instant rule to be procedural because it encodes the substantive value judgment that applications containing minor errors should be sacrificed to promote efficient application processing. JEM Brief at 28. We have indeed held that the procedural exception to notice and comment "does not apply where the agency 'encodes a substantive value judgment.'" *Reeder,* 865 F.2d at 1305 (quoting *American Hosp. Ass'n,* 834 F.2d at 1047). However, JEM's attempt to force the "hard look" rules into this rubric is unavailing. JEM's reasoning threatens to swallow the procedural exception to notice and comment, for agency housekeeping rules often embody a judgment about what mechanics and processes are most efficient. In *Air Transport Association of America v. Department of Transportation,* 900 F.2d 369 (D.C.Cir.1990), *remanded,* 498 U.S. 1077, 111 S.Ct. 944, 112 L.Ed.2d 1033 (1991), *vacated as moot,* 933 F.2d 1043 (D.C.Cir.1991), a divided panel of this court held that the Department of Transportation's adoption of a comprehensive scheme for adjudicating civil penalty actions required notice and comment, in part because the rules encoded a substantive value judgment "on the appropriate balance between a defendant's *rights* to adjudicatory procedures and the agency's interest in efficient prosecution." *Id.* at 376 (emphasis in original). Although *Air Transport* is no longer binding precedent, we recognize that our opinion there extended the "value judgment" rationale further than any other case of this circuit of which we are aware; and to the extent that it suggests a different result here, we disavow its reasoning.

## C. JEM's Statutory and Due Process Claims

■ JEM's remaining arguments do not detain us long. First, JEM contends that it was entitled to have its application designated for a hearing under sections 309(d)(2) and (e) of the Communications Act of 1934. Read together, those sections provide generally that if the Commission "for any reason is unable to find" that granting an application would be in the public interest, it "shall formally designate the application for hearing" on those grounds. 47 U.S.C. §§ 309(d)(2), (e) (1988).

Our cases make abundantly clear that the Commission enjoys broad discretion to establish cut-off dates beyond which applications failing to meet specified criteria will be dismissed *without a hearing.* We have "acknowledge[d] and approve[d] the device of cut-off as a reasonable and necessary limitation on the statutory right to a comparative hearing." *Radio Athens, Inc. (WATH) v. FCC,* 401 F.2d 398, 400–01 (D.C.Cir.1968). Only recently, we reiterated that "[t]here can be no doubt of the FCC's authority to impose strict procedural rules in order to cope with the flood of applications it receives or expects to receive." *Glaser v. FCC,* 20 F.3d 1184, 1186 (D.C.Cir.1994).

The only limitation we have placed on this general principle is that an applicant must be given adequate notice of the procedural

---

**1.** The fact that the rule in *Lamoille Valley* was promulgated in response to legislation directing the agency to issue a final decision on the proposed merger within 180 days does not undermine the applicability of our analysis and holding in that case.

rules. Thus, we held in *Ranger* that where the FCC had issued clear rules prescribing the requisites of a complete license application, it was not obliged to hold a hearing before dismissing applications that failed to comply with those rules. *Ranger,* 294 F.2d at 242. Indeed, *Ranger* considered statutory language virtually identical to that relied on by JEM in this case, and held that the right to a hearing "was intended to apply to what might be termed questions of substance," *i.e.* to questions about the public interest that might arise *after* the Commission had all the required information before it. *Id.* The language did *not* mean that the Commission was required to designate a hearing where the applicant had failed to supply information necessary to a consideration of the application's merit.[2] *See id.* As we discuss below, the Commission provided adequate notice of the content of the "hard look" rules; thus, JEM's contention that the FCC was required to hold a hearing to determine which set of JEM's conflicting geographic coordinates was correct is meritless.

██ Finally, JEM makes the related claim that the FCC's failure to provide notice and an opportunity to be heard before dismissing its application deprived JEM of due process under the Fifth Amendment. This claim also fails. In approving the FCC's stringent processing procedures, we have held that "fundamental fairness [only] requires that an exacting application standard, enforced by the severe sanction of dismissal without consideration on the merits, be accompanied by full and explicit notice of all prerequisites for such consideration." *Salzer v. FCC,* 778 F.2d 869, 871–72 (D.C.Cir.1985) (approving FCC's adoption of "letter perfect" standard). Moreover, we have held in a prior case that, despite the absence of formal notice and comment proceedings for the "hard look" rules, the FCC gave adequate notice that FM license applications would be found acceptable for filing only if they fully complied

with the FCC's technical rules. *See Malkan FM Assocs. v. FCC,* 935 F.2d 1313, 1315 (D.C.Cir.1991). In *Malkan,* the court found that the Commission gave adequate notice that applicants must comply with antenna height limits, because that item was enumerated in Appendix D to the *FM Processing Rules. See id.* at 1319. The same conclusion must follow here, as Appendix D also clearly states:

> The geographic coordinates, to the nearest second, of the proposed transmitter site must be provided. Absence of these data makes it impossible to determine the distances from the proposed site to other proposed or existing broadcast facilities and to the community of license.

*FM Processing Rules,* 50 Fed.Reg. at 19945 (Appendix D). Immediately preceding this language, the "hard look" rules also warned that the absence of the specified data would prevent a determination of acceptability and render an application not substantially complete. *See id.* JEM was entitled to no more than this clear and explicit notice.

### III. CONCLUSION

As discussed above, JEM's challenge to the "hard look" rules fails because it is untimely, and because notice and comment were not required for the promulgation of the rules. JEM's other contentions also lack merit. Accordingly, the Commission's orders are

*Affirmed.*

---

2. JEM would distinguish *Ranger* because the court suggested in dicta that an application "lacking in minor respects" should be afforded a hearing. *See Ranger,* 294 F.2d at 243. Although JEM attempts to frame the defect in its own application as the merest peccadillo—a typographical error—the fact remains that the error appeared in a critical portion of the application and created an inconsistency that rendered the Commission staff unable to determine a key piece of required information. By contrast, there is no suggestion that JEM's application would have been dismissed had it contained, for example, some misspelled words—the type of truly insignificant error perhaps contemplated in *Ranger.*