ARCTIC EXPRESS, INC., Petitioner,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, Federal Highway Administration, Respondent.

No. 98–3182.

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1999.

Decided Oct. 19, 1999.

David A. Ferris (briefed), Ferris & Ferris, Columbus, OH, Anthony J. McMahon (argued), Bethesda, MD, for Petitioner–Appellant.

Michael Jay Singer (briefed), Constance A. Wynn (argued and briefed), U.S. Department of Justice, Civil Division, Appellate Staff, Washington, D.C., for Respondent–Appellee.

Before: KRUPANSKY, RYAN, and SUHRHEINRICH, Circuit Judges.

RYAN, Circuit Judge.

This is an appeal from an order of the Federal Highway Administration requiring the petitioner, Arctic Express, Inc., to pay a $20,000 civil penalty for regulatory violations involving (1) use of drivers who had falsified their duty status logs and (2) failure to examine each driver's daily duty status logs for completeness, truthfulness, and accuracy in accordance with a 1993 consent order. Arctic claims that its liability was determined according to regulatory

standards that were not promulgated in compliance with the Administrative Procedure Act, *see* 5 U.S.C. § 553, and which imposed an unlawful and unconstitutional standard of strict liability. Arctic also claims that the Federal Highway Administration's decision is not in accordance with the law or supported by substantial evidence.

We do not decide Arctic's statutory and constitutional challenges that improper standards were used to test the lawfulness of its conduct because Arctic did not present these challenges to the administrative tribunal, and now offers no satisfactory reasons for not having done so. Likewise, we do not decide Arctic's challenge to the so-called "notice and comment" issue because Arctic's challenge is untimely under the Hobbs Act, 28 U.S.C. § 2344. However, we conclude that the decision of the Associate Administrator is not supported by substantial evidence because it was not rendered in accordance with the administrative regulations governing the admissibility of evidence in such proceedings. Thus, for the reasons that follow, we vacate the Associate Administrator's decision.

## I.

The regulatory violations charged against Arctic arose out of a Notice of Claim and Notice of Investigation filed by the Federal Highway Administrator on February 11, 1994, listing 33 counts and assessing penalties against Arctic in the amount of $23,500. In its reply Arctic admitted certain counts and denied others, contested the civil penalty, and requested an oral hearing. The Regional Director opposed the request for hearing on the ground that no issues of material fact were presented, and sought a final order in its favor. The Associate Administrator denied the request for entry of a final order and granted the request for an oral hearing in an Order Appointing Administrative Law Judge. The Regional Director, by motion dated November 25, 1997, sought clarification and reconsideration of the As-

sociate Administrator's order. In response, and without an oral hearing, the Associate Administrator issued a final opinion and order on January 21, 1998. Consequently, no hearing was ever held before an administrative law judge.

In his January 21 opinion and order, the Associate Administrator assessed a $20,000 civil penalty against Arctic for 20 violations of 49 C.F.R. § 395.8(e), and 10 violations of 49 C.F.R. § 386.22. Section 395.8(e) provides for "prosecution" of drivers or motor carriers who fail to comply with the drivers' duty status log requirements or who falsify the logs. Section 386.22 and section 386.82 address consent orders and civil penalties for violations of notices and orders. The penalties associated with § 395.8 were assessed because Arctic used drivers who had falsified records of duty status. The penalties associated with § 386.22 and § 386.82 were assessed because Arctic failed to comply with section 3B of the 1993 consent order, requiring that Arctic examine each driver's daily record of duty status for completeness, accuracy, truthfulness, and compliance with 49 C.F.R. § 395.3 (Maximum driving time). The three remaining counts were, in due course, voluntarily dismissed by the Highway Administration.

The arguments submitted to the Associate Administrator focused on whether the evidence was sufficient to prove that Arctic engaged in unreasonable or negligent conduct when it used drivers who had falsified their logs, or when it failed to properly examine the logs as required by the consent order. Here, in addition to its challenge to the sufficiency of the evidence, Arctic maintains that the Highway Administration has subjected Arctic to a standard of strict liability pursuant to certain Questions and Answers, specifically nos. 7, 8, and 21 of the agency's "Regulatory Guidance."

## II.

### A.

Arctic claims that the civil penalties were imposed unlawfully and unconstitu-

tionally, and it maintains that it preserved this challenge below by its argument that its conduct was reasonable. The imposition of civil penalties for violations of regulations promulgated by the Secretary of Transportation is governed by 49 U.S.C. § 521. Section 521(b)(8) governs petitions for review of final orders of the Secretary issued under § 521 and provides that "[n]o objection that has not been urged before the Secretary shall be considered by the court, unless reasonable grounds existed for failure or neglect to do so." Administrative exhaustion

> is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The administrative exhaustion doctrine exists "to permit an administrative agency to apply its special expertise in interpreting relevant statutes and in developing a factual record without premature judicial intervention." *Southern Ohio Coal Co. v. Donovan*, 774 F.2d 693, 702 (6th Cir.1985). While we have also stated that if "the purposes behind the exhaustion of administrative remedies doctrine are not served, exhaustion will not be required," *Central States, Southeast and Southwest Areas Pension Fund v. 888 Corporation*, 813 F.2d 760, 764 (6th Cir.1987), the Supreme Court has explained that congressional intent is of " 'paramount importance' to any exhaustion inquiry" such that "[w]here Congress specifically mandates, exhaustion is required," *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (citation omitted). Where Congress has not mandated exhaustion, the exercise of jurisdiction is governed by "sound judicial discretion." *Id.* The *McCarthy* Court went on to discuss at length the appropriate inquiries surround-

ing such an exercise of discretion, and concluded that exhaustion was not required under the circumstances presented there. However, the Court was quite clear in its explanation that it undertook that discussion only after finding "[a]s a preliminary matter ... that Congress ha[d] not meaningfully addressed the appropriateness of requiring exhaustion in [the relevant] context." *Id.* at 149, 112 S.Ct. 1081. Indeed, the Tenth Circuit recently observed in *Garrett v. Hawk*, 127 F.3d 1263, 1264–65 (10th Cir.1997), that Congress overruled *McCarthy* when it amended the applicable statute to specifically require exhaustion of administrative remedies by prisoners seeking "*Bivens* relief" in federal court.

Courts have waived the exhaustion requirement where constitutional issues are asserted. *See, e.g., Gilbert v. National Transp. Safety Bd.*, 80 F.3d 364, 367 (9th Cir.1996). However, the Ninth Circuit explained further:

> A petitioner ... may not obtain judicial review simply by invoking the term "due process." ... [D]ue process "is not a talismanic term which guarantees review in this court of procedural errors correctable by the administrative tribunal." If the alleged constitutional violation amounts to a mere procedural error, which the NTSB could have remedied if properly presented to the NTSB, a petitioner may not obtain judicial review by asserting the error amounted to a deprivation of due process.

*Id.* (citation omitted).

■ Because § 521(b)(8) specifically prohibits the court from hearing an objection to a civil penalty imposed under § 521 that was not raised below, this court does not have jurisdiction to hear new claims on appeal unless reasonable grounds existed for the failure or neglect to do so. Arctic offers no explanation for its failure to challenge the Questions and Answers below, instead arguing that the issue was pre-

served because Arctic argued that it took reasonable steps to ensure compliance and that the evidence did not support a finding of negligence. However, the fact that Arctic did not prevail on its argument below that its conduct was reasonable, *i.e.*, not negligent, does not compel the conclusion that the penalties were imposed according to a standard of strict liability. Arctic did not challenge the Questions and Answers below, and it never mentioned "strict liability" or "absolute liability" in the papers it filed with the Associate Administrator. It simply argued that its conduct was reasonable under the circumstances. Moreover, in the portion of its reply brief in which it responds to the Highway Administrations's jurisdictional arguments, Arctic fails to identify even a single case supporting the proposition that its references below to the reasonableness of its conduct preserve an argument on appeal that addresses imposition of a strict liability standard. Arctic made no attempt to explain how or if its due process claim is sufficiently colorable to defeat the exhaustion doctrine. Thus, we conclude that we lack jurisdiction to correct any alleged defect in the alleged application of the Questions and Answers during the administrative proceedings.

### B.

Arctic also claims that the challenged Questions and Answers violate the notice and comment rule-making requirements of the Administrative Procedure Act. *See* 5 U.S.C § 553. This court has jurisdiction over the exercise of the powers and duties of the Secretary of Transportation under 49 U.S.C. § 351. The Hobbs Act, under 28 U.S.C. § 2342, provides that the United States Courts of Appeals have exclusive jurisdiction to set aside rules, regulations, or final orders of the Secretary of Transportation issued pursuant to part B of Subtitle IV of Title 49, which, among other things, enumerates the powers of the Secretary over motor carriers. Section 2344 provides that "[a]ny party aggrieved by [a] final order [reviewable under the Hobbs Act] may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies." 28 U.S.C. § 2344.

We have not directly addressed the issue whether, under the Hobbs Act, this court has jurisdiction over a notice and comment challenge to an administrative rule after expiration of the 60 days. However, in *JEM Broadcasting Co. v. FCC*, 22 F.3d 320 (D.C.Cir.1994), the petitioner, JEM, sought judicial review of "hard look" rules promulgated by the FCC after the time under the Hobbs Act had expired, claiming that the rules were invalid because they violated the notice and comment requirement. JEM argued that it could not have challenged the rules before the FCC applied them to JEM's detriment because JEM was not then an aggrieved party. *Id.* at 324. The D.C. Circuit rejected this argument, characterizing it as a "back door" attack on the "procedural genesis" of the rule in the context of an enforcement action. *Id.* Similarly, in *Florilli Corp. v. Pena*, 118 F.3d 1212 (8th Cir. 1997), the court dismissed a notice and comment challenge to the Highway Administration's carrier rating rules, explaining that "[a]lthough a party may challenge the substantive validity of an agency's rules outside of the sixty-day period, challenges to the procedural genesis of administrative rules must conform to the time limitation under the Hobbs Act." *Id.* at 1214 (citation omitted). The court rejected the argument that the petitioner was not sufficiently aggrieved before detrimental application of the rule because it considered a party "'aggrieved,' giving the party standing to appeal an agency decision, where ... the agency provided no forum for the party to participate in the proceedings through which the agency created the contested provisions." *Id.*

The Regulatory Guidance was published in the Federal Register on April 4, 1997. The latest date for a challenge of this type, therefore, was on or about June

4, 1997. The first time Arctic asserted the challenge was August 31, 1998. Assuming, without deciding, that the Questions and Answers are final orders, regulations, or rules that Arctic may challenge in court, rather than interpretive rules, policy statements, or rules of practice, see 5 U.S.C. § 553, as in *JEM Broadcasting* and *Florilli*, Arctic's notice and comment challenge must fail because it was asserted long after the expiration of the 60–day time limitation.

## III.

Arctic argues that the decision below should be set aside because the agency did not comply with 49 C.F.R. § 386.49 by submitting affidavits with its documentary evidence when it moved for a final order.

■ We review the findings and conclusions of the Associate Administrator to determine whether they "were supported by substantial evidence, or were otherwise not in accordance with law." 49 U.S.C. § 521(b)(8). We defer to an administrative agency's interpretation of its own rule or regulation unless it is plainly erroneous or inconsistent with the regulation. *See Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *Navistar Int'l Transp. Corp. v. United States EPA*, 858 F.2d 282, 288 (6th Cir.1988). The law governing the evidentiary issue before us today, 49 C.F.R. § 386.49, provides that affidavits are required where written evidence is submitted:

> All written evidence shall be submitted in the following forms:
> (a) An affidavit of a person having personal knowledge of the facts alleged, or
> (b) Documentary evidence in the form of exhibits attached to an affidavit identifying the exhibit and giving its source.

49 C.F.R. § 386.49.

In *In re WDP Transportation, Inc.*, 58 Fed.Reg. 16916, 16933 (1993), the Associate Administrator found fatal defects in a Highway Administration's case because it was not supported by affidavits *or other evidence*. According to the Highway Administration, this resulted in the practice of not requiring affidavits. However, in this case, the Associate Administrator reversed that practice prospectively, while allowing it to continue in cases already filed if the "other evidence" was sufficient to make out a *prima facie* case of regulatory violations.

The Highway Administration's "practice" of not requiring affidavits under *WDP Transportation* was plainly erroneous and wholly unsupportable under the express terms of the regulation. Thus, because evidence was submitted according to a plainly erroneous interpretation of the regulation, and the penalties were assessed wholly on the basis of that evidence, the penalties are not in accordance with the law. Because the evidence is inadmissable under the regulation without the affidavits, the decision below is not supported by substantial evidence. The Associate Administrator gave no rationale for his decision to give reversal of the old practice only prospective effect. Although the Associate Administrator recognized the error and reversed the practice prospectively, he refused to grant Arctic the benefit of the rule. The penalties appear to be justified; however, we will not adhere to the Highway Administration's plainly erroneous interpretation of the regulation. Therefore, we **VACATE** the decision below because it is not supported by substantial evidence or in accordance with the law where the evidence submitted did not conform to the requirements of the governing regulation.