NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 17 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SAN LUIS OBISPO MOTHERS FOR PEACE; FRIENDS OF THE EARTH, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES NUCLEAR REGULATORY COMMISSION; UNITED STATES OF AMERICA, <br><br> Respondents, <br><br> --------------------------------------- <br><br> PACIFIC GAS & ELECTRIC COMPANY, <br><br> Intervenor. | No. 23-3884 <br><br> Agency No. 50-275 <br> Nuclear Regulatory Commission <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Nuclear Regulatory Commission

Argued and Submitted November 4, 2024
Phoenix, Arizona

Before: PAEZ, BERZON, and OWENS, Circuit Judges.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Diablo Canyon is a nuclear power plant in San Luis Obispo, California, owned and operated by Pacific Gas & Electric Company (PG&E). Petitioners San Luis Obispo Mothers for Peace (SLOMFP) and Friends of the Earth (FOE) challenge a final order issued by the U.S. Nuclear Regulatory Commission (NRC), which denied Petitioners an administrative hearing regarding a 2023 change to a safety-related surveillance program at one of Diablo Canyon's nuclear reactors (Unit 1). The change in question is the postponed withdrawal and testing of Capsule B, one of several surveillance capsules used to monitor the structural integrity of the reactor vessel surrounding Unit 1's reactor core. We deny the petition for review.

1. We have jurisdiction only over the agency's most recent order denying Petitioners an administrative hearing on the latest postponement to Capsule B's withdrawal (the 2023 "Denial Order"), not the decisions in which the agency permitted repeated delays in the capsule's removal (the 2023, 2012, 2010, and 2008 "Extension Approvals").

For an appellate court to review agency action under the Hobbs Act, the agency must "promptly give notice" of the "entry" of a "reviewable" and "final" order "by service or publication in accordance with its rules." 28 U.S.C. § 2344; *see also id.* § 2342; 42 U.S.C. § 2239. "Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of

appeals wherein venue lies." 28 U.S.C. § 2344. As a "defendant-protective statute of repose," the Hobbs Act bars "any suit that is brought [after the] specified time . . . even if this period ends before the plaintiff has suffered a resulting injury." *Corner Post, Inc. v. Bd. of Gov. of Fed. Res. Sys.*, 603 U.S. 799, 812–13 (2024) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 7–8 (2014)).

The 2023 Denial Order satisfies the Hobbs Act's requirements. The four Extension Approvals, however, are not properly before the court, as Petitioners did not challenge these decisions within sixty days of their entry.

a. An appellate court may consider an otherwise-time-barred challenge to an agency action if a more recent agency decision reopens or reconsiders the older one. *See, e.g.*, *Public Citizen v. NRC*, 901 F.2d 147, 150 (D.C. Cir. 1990). But here, each of the NRC's Extension Approvals was a standalone determination the agency made, using information available at the time the extension was requested to assess whether postponing Capsule B's withdrawal would be appropriate and consistent with the company's obligations under agency regulations. Each time the NRC approved Capsule B's postponed withdrawal, and then when the agency denied Petitioners' hearing request on the latest Extension Approval in 2023, the agency made a new decision; it did not reopen or reconsider an earlier one. *Cf. id*.

The Extension Approvals do *relate* to the 2023 Denial Order in that they concern the timeline for withdrawing Capsule B. But "a timely challenge to one

3

[agency] order" does not ordinarily "allow[]" a party "to challenge any related earlier orders." *Save Our Skies LA v. Fed. Aviation Admin.*, 50 F.4th 854, 861 (9th Cir. 2022).

b. Nor, contrary to Petitioners' contention in their Reply Brief, are the challenges to the four Extension Approvals timely on the ground that the agency never "publishe[d]" notice of these decisions "in the Federal Register" or "g[ave] some other kind of effective notice."

First, we ordinarily "review only issues which are argued specifically and distinctly in a party's opening brief," and will not address arguments made only on reply. *Roley v. Google LLC*, 40 F.4th 903, 911 (9th Cir. 2022) (quoting *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012)).

Second, in any case, Petitioners' argument is unavailing. As we explain below, the Extension Approvals did not amend Diablo Canyon Unit 1's operating license, so notice of those decisions did not need to be published in the Federal Register.[1] *See* 42 U.S.C. § 2239(a)(2)(B); 10 C.F.R. §§ 2.104(a), 2.105(a), 50.91. The NRC did file the Extension Approval on its public, online "Agencywide Data Access and Management System" (ADAMS). That form of publication was sufficient to "'put[] aggrieved parties on reasonable notice of the' action they seek

---

[1] To the extent that Petitioners contend the agency separately violated the Atomic Energy Act by failing to publish the Extension Approvals in the Federal Register, that argument also fails because there was no license amendment.

4

to challenge." *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 106 (D.C. Cir. 2020) (quoting *JEM Broad. Co., Inc. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994)). ADAMS is accessible to the public online and searchable by date and keyword; the effort needed to do so is no greater (and probably less) than finding decisions in the Federal Register, and not equivalent to "squirrel[ing] through the Commission's" physical files, as in *Public Citizen*. 901 F.2d at 153.

In sum, the only challenged agency decision we may review is the NRC's 2023 decision to deny Petitioners an administrative hearing regarding the latest postponed withdrawal of Capsule B.

2. The NRC did not violate the Atomic Energy Act by failing to offer or hold a hearing on the agency's 2023 Extension Approval.

Section 189 of the Atomic Energy Act requires that the NRC "grant a hearing upon the request of any person whose interest may be affected" by a license amendment proceeding. 42 U.S.C. § 2239(a)(1)(A). The agency need not provide a hearing where its action does not "in itself [constitute] a license amendment proceeding." *San Luis Obispo Mothers for Peace v. NRC*, 100 F.4th 1039, 1056 (9th Cir. 2024).

The NRC's 2023 Extension Approval did not amend Unit 1's operating license. A license amendment in 2006 allowed PG&E to "recover" to its license term the time Unit 1 spent in low-power testing mode, before receiving its full-

5

power license. Contrary to Petitioners' argument, the Safety Evaluation appended to the 2006 license amendment did not upgrade Unit 1's reactor vessel surveillance program from a three-capsule program to a four-capsule program, making the withdrawal of Capsule B part of PG&E's licensing obligations.

Capsule B was never a mandatory component of Unit 1's initial term reactor vessel surveillance program. Instead, it was installed to collect embrittlement data that would inform a license renewal application. Neither the text of the 2006 license amendment nor the text of the 2006 Safety Evaluation upgraded Unit 1's surveillance program from a three-capsule to a four-capsule program.

The 2006 license amendment extended Unit 1's initial license term from September 22, 2021 to November 2, 2024; it did not mention capsule withdrawal. The Safety Evaluation "amend[ed] the projected withdrawal for Capsule B," while confirming that, under Appendix H, the industry standard "of record" for Unit 1's surveillance program was American Society for Testing and Materials (ASTM) Standard Practice E185-70. That standard only mandates the withdrawal of three surveillance capsules. The Safety Evaluation concluded that the recovery of Unit 1's low-power testing time was permissible because the surveillance capsule withdrawal schedule for Unit 1 "remain[ed] in compliance" with Appendix H and "the ASTM E185 version[] of record for the unit[]."

Nor did the Safety Evaluation accompanying the 2006 license amendment make the extension of Unit 1's license *implicitly* contingent on the withdrawal of Capsule B. In proposing to implement its supplemental surveillance program in 1992, PG&E had explained that its purpose was to "obtain additional embrittlement data for . . . the period beyond which the original surveillance program was designed and to improve the overall surveillance program by incorporating, where possible, requirements" from later ASTM editions and other industry standards. When the NRC approved that supplemental surveillance program, it recognized that the three capsules that the company had already designated for testing—S, Y, and V—would be removed "to determine the effect of irradiation during the vessel's current design life . . . [in a manner that] me[t] the requirements of ASTM E 185-70." The supplemental capsules, Capsule B among them, would "provide data for the license renewal period."

The 2006 Safety Evaluation accorded with the government and PG&E's joint understanding of Capsule B's purpose: to provide long-term embrittlement data beyond the initial license term of Unit 1. The Evaluation recognized that the plan for Capsule B's withdrawal was consistent with more recent versions of ASTM E185, but did not purport to change the applicable ASTM "version of record." Capsule B's withdrawal by a particular time was thus not a tacit condition attached to the extension of Unit 1's initial operating term.

7

This result is consistent with the NRC's more general position that a change in a reactor's surveillance capsule schedule does not ordinarily constitute a license amendment. The agency's "wish to verify in advance that a proposed revision [to the withdrawal schedule] conforms to the required technical standard" under Appendix H does not necessarily "alter the terms of the license, and does not grant the Licensee greater operating authority." *In the Matter of Cleveland Electric Ill. Co. (Perry Nuclear Power Plant, Unit 1)*, 44 N.R.C. 315, 1996 WL 813246, at *11 (1996). The agency's review of adjustments to surveillance capsule withdrawal schedules typically "*enforces* license requirements," rather than changing them. *Id.*

As PG&E had no obligation to withdraw Capsule B by a particular time under its existing license, the NRC did not amend that license in 2023 when it granted PG&E's request to postpone again the withdrawal of Capsule B. The agency therefore did not owe SLOMFP and FOE a hearing on that decision. *Cf. San Luis Obispo Mothers for Peace*, 100 F.4th at 1056; *San Luis Obispo Mothers for Peace v. NRC*, 449 F.3d 1016, 1025–27 (9th Cir. 2006).

3. Because we have jurisdiction only over the 2023 Denial Order, we cannot substantively consider whether the Extension Approvals were arbitrary and capricious under the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

As to whether the agency acted arbitrarily and capriciously in issuing the Denial Order itself, Petitioners do not develop this claim in their Opening Brief.

Again, we ordinarily do not review issues not argued specifically and distinctly in a party's opening brief. *Roley*, 40 F.4th at 911. In any case, the NRC's decision to deny Petitioners' hearing request was not arbitrary and capricious, both because they were not entitled to a hearing under the Atomic Energy Act and because the agency adequately explained the rationale for its Denial Order.

Nor did the NRC violate the Atomic Energy Act by failing to conduct a health and safety evaluation of the purported changes to Unit 1's license. Petitioners' argument on appeal is misplaced for the same reason its claim to an administrative hearing fails: There was no license amendment in 2023, so the amendment-specific regulatory provision that Petitioners cites does not apply. And in any event, the NRC *did* conduct a separate Safety Evaluation each time it considered whether to grant PG&E's requested postponement and concluded that each postponement would be acceptable under the relevant standard.

\* \* \* \*

We share Petitioners' concerns about the public health and safety implications of repeatedly postponing Capsule B's withdrawal. It has been about two decades since PG&E withdrew and tested a surveillance capsule from the Unit 1 reactor vessel—and even longer since a surveillance capsule withdrawn from Unit 1 generated credible data. Although Unit 1's operating license has now officially expired, the reactor continues to operate under the NRC's "timely

9

renewal" rule because PG&E has submitted a license renewal application. *San Luis Obispo Mothers for Peace*, 100 F.4th at 1056–58 (citing 10 C.F.R. § 2.109(b)).

Capsule B remains a key source of data for the license renewal period. Under the current schedule, PG&E is slated to remove Capsule B in the spring of 2025 and use it to inform the company's pending license renewal application for Unit 1. Any further delay in Capsule B's withdrawal will mean that PG&E lacks a critical data source about the future integrity of the reactor vessel, without which a future license renewal may be subject to legal challenge.

We conclude that SLOMFP and FOE's current challenge to the NRC's 2023 Denial Order cannot be sustained.

**PETITION FOR REVIEW DENIED.**