SUDBRINK BROADCASTING, INC.
OF FLORIDA, Appellant,

v.

FEDERAL COMMUNICATIONS
COMMISSION, Appellee,

WFTL Broadcasting, Inc., Intervenor.

No. 73–1849.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 19, 1974.

Decided Dec. 30, 1974.

John Wells King, Washington, D. C., with whom Michael H. Bader, Washington, D. C., was on the brief, for appellant.

James R. Hobson, Counsel, F.C.C. with whom John W. Pettit, Gen. Counsel, and Joseph A. Marino, Associate Gen. Counsel, Washington, D. C., were on the brief, for appellee.

Rainer K. Kraus and Herbert D. Miller, Jr., Washington, D. C., were on the brief for intervenor.

Before FAHY, Senior Circuit Judge, LEVENTHAL, Circuit Judge, and DAVIS,* Judge, United States Court of Claims.

DAVIS, Judge:

In December 1971, appellant Sudbrink Broadcasting, Inc., licensee of radio station WLYF (FM), Miami, Florida, requested the permission of the Federal Communications Commission to identify the station as "WLYF, Miami-Fort Lauderdale." Sudbrink's application, based on the double factors that the station puts a principal city signal over Fort Lauderdale and that the two communities are economically cohesive, was opposed by intervenor WFTL Broadcasting Company, licensee of WFTL, one of four Fort Lauderdale FM stations. WFTL maintained that putting a principal city signal over a community was not sufficient to warrant granting dual identification, that Miami and Fort Lauderdale are separate economic and radio markets, that WLYF had served Miami poorly and should not be allowed to expand its service commitment, and that the smaller Fort Lauderdale radio stations would be economically injured by the dual-city identification. In July 1973, the Commission issued a Memorandum Opinion and Order denying Sudbrink's request because it lacked "the competitive and economic reasons which ordinarily justify waiver" of the single-city identification requirement and because Miami and Fort Lauderdale are separate economic entities. 41 F.C.C.2d 818, 819 (1973). Sudbrink appeals from that decision.[1]

While station identification announcements are not the most significant portion of a radio station's program day, they are among the most highly regulated. Under FCC regulations, 47 C.F.R. § 73.1201 (1973), each radio and television station must identify itself at the beginning and end of each "time of operation" and hourly. The regulation goes on to state that "Official station identification shall consist of the station's call letters immediately followed by the name of the community or communities specified in its license as the station's location," but that, with written authorization, other communities may also be named. 47 C.F.R. § 73.1201(b)(1–2) (1973).[2] Sudbrink's December 1971

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. The intervenor moved to dismiss the appeal for lack of jurisdiction in this court. Another division of the court denied the motion in February 1974.

2. The unified regulation for radio and television quoted above became effective on Janu-

letter was an application for such additional authorization.[3]

■ Requests for "multi-city identification," usually denominated as requests for waiver of the station identification regulation, are not unusual, although this is the first time the issue has reached this court. The extra identification is usually sought as a way to try to increase advertising revenues, and does not constitute a modification of the station's license or a diminution of its obligation to serve the city or place of license. Ponce Television Corp., 18 F.C. C.2d 543, 545 (1969); General Electric Broadcasting Co., 16 F.C.C.2d 673 (1969).

■ The main policy statement on the subject came in 1957 when the Commission, citing administrative difficulties and the desire to preserve the concept of single-community identification, refused to promulgate a regulation allowing automatic waiver of the television station identification regulation[4] when certain technical and sociological standards were met. At the same time the Commission said:

> We will review any such requests in the light of all the relevant local circumstances, including the provision of a minimum city signal throughout the cities concerned, the applicant's proposals for the provision of studio facilities, the programming services to the cities concerned, other available television services, if any, the hardships, if any, which may be unjustifiably imposed by the present rules, and all other circumstances bearing on a decision

as to whether the authorization would be justifiable in the individual case as an exception to the general rule. Amendment of Part 3 of the Rules and Regulations Governing Main Studio and Station Identification of Television Broadcast Stations, 22 F.C.C. 1567, 1571 (1957) [cited as 1957 Report and Order].

With the waiver rules in this general posture, the Commission considered the 1963 requests of Wometco Enterprises and Sunbeam Television Corp., both licensees of Miami VHF television outlets, to identify as Miami-Fort Lauderdale stations. The application was refused, the F.C.C. distinguishing the case from prior waiver grants because it did not involve a small-city station "act[ing] to enhance [its] attractiveness . . . to national advertisers, by recognizing [its] predicted service contours." The Commission was also concerned that granting the waiver would lessen the attractiveness to potential licensees of an allocated but unused Fort Lauderdale UHF channel. Wometco Enterprises, Inc., 1 P&F Radio Reg. 2d 699, 700 (1963). Except for intervening policy statements and waiver grants, and given the present policy of considering AM, FM and television dual-identification requests on the same basis, see Radio Delegation Order, supra, note 4, Wometco would be a decisive precedent here. Our consideration is, however, made somewhat more complex by these intervening events on which appellant relies heavily.

In 1965, in response to this court's decision in Miners Broadcasting Service, Inc. v. F.C.C., 121 U.S.App.D.C. 222, 349

---

ary 19, 1970, 34 Fed.Reg. 19760–63 (1969), replacing three sections dealing with AM, FM and television stations. See 43 C.F.R. §§ 73.-117 (AM), 73.287 (FM), 73.652 (TV) (1969). The earlier versions (referred to in the decisions and orders which all parties cite) merely stated that the announcement must consist of "call letters and location." Id., see 47 C.F.R. §§ 73.30, 73.210, 73.613 (1969) (station location).

**3.** Without permission, as the Commission noted in its decision, WLYF could identify as "WLYF, Miami, serving Fort Lauderdale." 41 F.C.C.2d at 820; see Examples of Application of Rule Regarding Broadcast of Statements

Regarding a Station's Licensed Location, 10 F.C.C.2d 407 (1967).

**4.** In light of the Commission's current unified policy on multi-city identification, television and AM precedents are relevant to this FM case. See Amendment of Part 0 of the Commission's Rules—Commission Organization—To delegate to the Chief, Broadcast Bureau, Authority to Waive the Provisions of Sections 73.117 and 73.287 to the Extent of Allowing Multiple-City AM and FM Station Identification, Upon Proper Request Therefor, 10 F.C. C.2d 527 (1967) [cited as Radio Delegation Order].

F.2d 199 (1965), the Commission reconsidered its policy regarding the licensing of mutually exclusive suburban stations where the agency had reason to believe that an applicant was competing for the easier-to-obtain suburban station when it in fact intended to serve the central city. In developing a policy to screen out such pseudo suburban stations, the Commission found:

> Our experience compels us to conclude that as their power and coverage are increased to serve larger numbers of persons, stations in metropolitan areas often tend to seek out national and regional advertisers and to identify themselves with the entire metropolitan area rather than with the particular needs of their specified communities.

Policy Statement on Section 307(b) Considerations for Standard Broadcast Facilities Involving Suburban Communities, 2 F.C.C.2d 190, 192 (1965). Appellant maintains that this Policy Statement, even though only tangentially related to dual-city identification policies, effectively overrules *Wometco* by undercutting its rationale of helping the suburban station to obtain national advertising.

A year later, the F.C.C. reviewed the status of multi-city identification requests under the 1957 Report and Order, *supra.* Finding, in the case of television, that "The Commission has waived these provisions so as to permit multiple city identification in all situations in which the additional community or communities with which the station concerned wished to be identified were provided with" principal city signals, the FCC delegated the authority to waive the regulation, in cases where principal city strength was provided, to the Chief of the Broadcast Bureau. 31 Fed.Reg. 6627 (1966); *see* 47 C.F.R. § 0.281(d)(17) (1973).[5] In 1967, the Commission decided

to align AM and FM practice "with television practice to the extent of permitting on-the-air identification with all communities lying within the pertinent principal-city contours." Radio Delegation Order, *supra* note 4. This order likewise delegated waiver authority to the Chief of the Broadcast Bureau. *See* 47 C.F.R. § 0.281(kk) (1973).

From 1967 until the present, most requests for waivers of the station identification requirement have been routinely granted, in the absence of opposition, by the Broadcast Bureau, even in instances where the city of license is larger. *See, e. g.,* Public Notice, Broadcast Actions, Report No. 12098, January 28, 1974 (South Bend-Elkhart, Ind.); *Id.,* Report No. 12427, July 1, 1974 (Reading-Pottstown, Pa.); *Id.,* Report No. 12179, March 5, 1974 (Tampa-St. Petersburg, Fla.); *Id.,* Report No. 11363, March 13, 1973 (Dallas-Ft. Worth, Tex.). Where opposition has been filed, as in this case, the Broadcast Bureau has usually referred the request to the Commission.

In addition to the *Wometco* standard, the Commission's decisions in prior contested cases appear to articulate a number of criteria, including: (1) whether the station also proposes moving its transmitter and/or studio to the location with which it proposes to identify or adding a new studio in that city (*see* Ponce Television Corp., *supra,* 18 F.C.C.2d at 545; Merrimack Valley Communications, Inc., 20 F.C.C.2d 161, 163–164 (1969)); (2) mutuality, *i. e.* whether the opposing station would be eligible for dual-city identification (*see* Central California Communications Corp., 22 F.C.C.2d 629, 631 (1970)); (3) viability of the opposing station (*see id.* at 630; Ponce Television Corp., *supra* at 545; *cf.* Wichita-Hutchinson Co., 44 F.C.C. 2069, 2069–70 (1960)); and (4) viability of the station requesting the waiver (*see* Look Tel-

---

5. Until November 13, 1973, 47 C.F.R. § 0.281 contained a series of highly specific delegations of authority to the Chief of the Broadcast Bureau. By order dated October 31, 1973, 38 Fed.Reg. 31174 (1973), this section was amended so that it now states only broad

categories of cases in which the Broadcast Bureau cannot act alone. Neither party has argued that this change has any significant effect on the standards for waiver contained in the earlier delegation orders.

evision Corp., 15 F.C.C.2d 718, 719 (1968)). Where the applicant station has proposed a new studio as in *Ponce* and *Merrimack*, the Commission has denied dual-city identification, viewing the application as a change in place of license. The result has been the same where there has been a lack of mutuality or a substantial showing of economic injury to a floundering opposition station. Compare *Central California, supra* and *Ponce, supra* with *Wichita-Hutchinson, supra* (economic injury not proven). In *Look*, the Commission found that the tri-city identification which it had granted made that UHF facility viable, and so denied reconsideration of the waiver decision. In these cases, the Commission has also made it clear that it will not grant waiver requests based simply on a "community of interests" or a simple "trading area." *See Look, supra*, 15 F.C.C.2d at 719; *Central California, supra*, 22 F.C.C.2d at 630. But in none of the contested cases since 1963 did the agency deal with the *Wometco* issue—what to do when a much larger city station wishes to identify with a smaller outside community.

In the ruling now under challenge, the Commission returned to that problem. It held, first, that it was not enough to show mere technical compliance with the requirement that the station deliver a principal city signal to the second community; other factors had always to be taken into account. In this instance, as in *Wometco*, the most pointed of these additional matters was that a big-city station was trying to identify with a smaller neighboring community "in a different county, a different SMSA, and a different radio market."[6] Prior grants of dual-identification to a facility in a larger community were distinguished as involving either "twin cities" or communities "with a single television market which, in either event, are situated within a single SMSA."

■ The scope of judicial review of the FCC's decision is of course limited. It is our duty to consider whether the Commission has genuinely engaged in reasoned decision-making, *see* Greater Boston Television Corporation v. F.C.C., 143 U.S.App.D.C. 383, 444 F.2d 841, 851 (1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971); whether the Commission has either followed relevant precedent or adequately explained its reasons for not doing so, *see* New Castle County Airport Comm'n v. C.A.B., 125 U.S.App.D.C. 268, 371 F.2d 733, 735 (1966), cert. denied, 387 U.S. 930, 87 S.Ct. 2052, 18 L.Ed.2d 991 (1967); and whether the Commission has sufficiently set forth the basis for its decision so as to avoid making "the judicial review contemplated by the Act a perfunctory process," *see* Colorado Interstate Gas Co. v. F.P.C., 324 U.S. 581, 595, 65 S.Ct. 829, 89 L.Ed. 1206 (1945). In this connection, it is important that Sudbrink did not submit a request that the Commission follow its rules, but rather a request that the rules be waived. Such an applicant not only has the burden of convincing the agency that it should depart from rules presumptively in the public interest, *see* Carolina Broadcasting Co., 18 F.C.C.2d 482, 483 (1969), but in this court, "It must show that the Commission's reasons for declining to grant the waiver were so insubstantial as to render that denial an abuse of discretion." WAIT Radio v. F.C.C., 148 U.S.App.D.C. 179, 459 F.2d 1203, 1207, cert. denied, 409 U.S. 1027, 93 S.Ct. 461, 34 L.Ed.2d 321 (1972).

■ First of all, there is no doubt that the Commission properly rejected appellant's contention that the Radio Delegation Order, *supra* note 4, and its televi-

---

**6.** SMSA stands for Standard Metropolitan Statistical Area, *i. e.,* "a county or group of contiguous counties * * * which contains at least one central city of 50,000 inhabitants or more or 'twin cities' with a combined population of at least 50,000. Other contiguous counties are included in an SMSA if, according to certain criteria, they are essentially metropolitan in character and are socially and economically integrated with the central city." Statistical Abstract of the U.S. 2 (93d ed. 1972).

sion analog, 31 Fed.Reg. 6627 (1966), created the simple rule that, if a station puts a principal city signal over the second community, waiver will automatically be granted. As the Commission itself recognized, the delegation orders can be read in this simplistic fashion. 41 F.C.C.2d at 818–819; *see* text at note 5, *supra*. But it is clear from the FCC precedents discussed above that, at least in contested cases, the Commission has gone beyond merely looking at signal strength in making its decisions. By consistently treating the cases as true waiver requests—involving individual judgment and the exercise of discretion—the FCC has left itself the useful opportunity to consider in a particular case whether "a general rule, deemed valid because its overall objectives are in the public interest, may not be in the 'public interest' if extended to [a given] applicant." *WAIT Radio v. F.C.C.*, 135 U.S.App.D.C. 317, 418 F.2d 1153, 1157 (1969). In treating Sudbrink's application as a waiver request, and putting the burden on Sudbrink to show "competitive and economic reasons which . . . justify waiver," the Commission was clearly and correctly following its own past rulings.

■ In support of its argument for a discretionary grant, appellant submitted evidence tending to show the economic unity of Miami and Fort Lauderdale. (This presentation was of precisely the type of evidence of "community of interests" and "trading area" previously rejected in *Look, supra*, 15 F.C.C.2d at 719

and *Central California, supra*, 22 F.C. C.2d at 630.) Intervenor, in opposition, rebutted the showing of community of interests and claimed that it and other Fort Lauderdale FM and UHF stations would suffer economic injury if WLYF's application were granted.[7]

■ On this record, we hold that the Commission could permissibly conclude that, under the standards suggested in its precedents, Sudbrink's application should be refused. At the very best for the applicant, the case was not at all clear-cut. WLYF did not exclude itself by proposing a Fort Lauderdale studio,[8] and the showing of direct economic injury to intervenor was neither solid nor great. However, mutuality as to WFTL was then unclear[9] and the evidence suggested that WLYF, which was doing quite well even in Fort Lauderdale, did not need the dual-city identification to survive.

■ The balance was swung, as the Commission's opinion reveals, by weighing the relative sizes and positions of the two communities. Following *Wometco*, the agency chose to disallow the station in the large metropolitan area from extending itself to an unequal suburb (or neighboring community) on the general ground that the existing and potential small city stations, already competing for limited advertising revenues with the nearby big city units, might be so hurt as to affect their service. Conversely, dual-city identification can be granted to

---

7. WFTL's main argument was neither of those cited above, but that WLYF had neglected Miami's needs in its programming and should not be allowed to extend its service commitment where it had done so poorly in the past. The Commission ignored this argument in its decision, and, while it figures prominently in the FCC's brief, this court may consider only what the agency did, not counsel's post hoc rationalizations, spelling out different grounds. *WAIT Radio, supra*, 418 F.2d at 1158.

8. Intervenor argued that lack of the Fort Lauderdale studio was ground for not granting a waiver but *Ponce Television, supra*, 18 F.C.C.2d at 545 and *Merrimack Valley, supra*,

20 F.C.C.2d at 163–164, indicate that such a proposal could have been regarded as a request for a change of city of license and could have led to a denial of the waiver request.

9. WSHE, a Fort Lauderdale station which intervened briefly in opposition and then withdrew its opposition, possesses the required signal and received a waiver for dual-city "Fort Lauderdale-Miami" identification by the time of the *Sudbrink* decision, as did one other Fort Lauderdale FM station subsequently. Public Notice, Broadcast Actions, Report No. 11544, May 29, 1973 (WSHE); *Id.*, Report No. 12427, July 1, 1974 (WAXY).

the satellite smaller-town station so to further its ability to attract advertisers who will supply added revenue to "improve their competitive position vis-a-vis big city neighbors." 41 F.C.C.2d at 819. Taken by itself, this policy clearly embodies a reasonable position which cannot be overturned without substituting. judicial for administrative discretion.[10]

Appellant urges, however, that the *Wometco* principle has been thoroughly undercut by the 1965 Policy Statement on Section 307(b) Considerations for Standard Broadcast Facilities Involving Suburban Communities, 2 F.C.C.2d 190, *supra*, as well as by numerous grants in the past decade of dual-identification to communities which were larger than the new locations they sought to cover. We find no necessary inconsistency between the *Wometco* standard and the suburban stations policy statement, which was directed to the situation where the Commission had reason to believe that the applicant for the suburban station was from the beginning covertly intending to serve the entire metropolitan area. The policy statement deals with a masquerading suburban station with imperial designs while *Wometco* is concerned with a bona-fide smaller community facility continuing to serve its own area and needing help to attain that end.

As for the grants on which Sudbrink relied, the Commission's opinion distinguishes them as involving "either 'twin cities' or non-adjoining communities within a single television market which, in either event, are situated within a single SMSA." This last is incorrect in some respects,[11] but despite this mistake we think the FCC was driving at a recognizable and reasonable cleavageline. On the one hand, a station in a large metropolitan area (Miami) is seeking to extend its identification to a considerably smaller neighboring community outside the normal metropolitan market (Fort Lauderdale). On the other hand, there are the differing situations which smack for less of the giant trying to smother the pygmy because in those cases the city of the applicant's license, though larger than the community to be added, can hardly be thought of as a great metropolitan center acting as an all-consuming magnet (Sacramento-Stockton; Huntsville-Decatur; Pueblo-Colorado Springs). Still other grants cited by appellant involved "twin cities" each of which has long had solid recognition and standing of its own and both of which are embraced in the same markets (Tampa-St. Petersburg; Dallas-Fort Worth).

In addition to the instances on which it relied before the FCC, appellant has proffered to us later grants which it deems inconsistent with the denial in its case. Of course the Commission did not have the opportunity to discuss these instances, but we have considered them and do not find any vital contradiction. These were all uncontested applications, and the Commission's practice has permissibly been to give more careful scrutiny when a request is opposed. More fundamentally, these decisions all appear to fall into the same distinguishable classifications as the other examples Sudbrink stresses. Some involve smaller, non-dominant, non-metropolitan communities, one of which happens to be larger than its neighbor although not in the magnetic position of Miami (which is, of course, one of the country's great cities) (South Bend-Elkhart, Ind.; Reading-Pottstown, Pa.; Nampa-Boise-Caldwell,

---

10. The *Wometco* decision also observed that grant of dual-identification in that case might inhibit development of a new Fort Lauderdale UHF station. This was an additional ground, not the only or main support of the ruling. In the present case, the Commission correctly recognized that "the UHF principle is, of course, not applicable here," but went on to apply the other aspect of the *Wometco* decision.

11. Of the earlier grants distinguished by the FCC, Sacramento and Stockton are each a separate SMSA, Decatur lies outside the Huntsville SMSA, and Pueblo and Colorado Springs, Colorado are each a separate SMSA. 1970 Census of Population, Vol. 1, Characteristics of the Population, Part A, Tables 13 (Alabama, Colorado, California) (1972).

Idaho). In others, the two cities are Tampa and St. Petersburg, which, as noted above, have long had a very close connection and each of which can stand on its own feet vis-a-vis the other. In still another instance a Fort Lauderdale station was allowed to identify with Miami—the reverse of the present situation. Since the circumstances were thus appreciably different, we cannot say that any of these grants undermines the denial of appellant's request.

In our view, appellant's position is not enhanced even if the "waiver" analysis set forth above is put to one side because of the frequency with which waivers have been granted. Appellant still has the burden of showing that the Commission's practice is unreasonable, and the foregoing discussion makes it clear that we do not consider appellant to have sustained that burden.

It is true that the Commission's treatment over the years of the dual-identification problem has left considerable to be desired by way of precise articulation of standards, explanation of particular grants, differentiation of grants from denials, and clear development of harmonious principles. There is much to be said for the substitution of published general rules in place of the ad hoc process used up to this time. But the Commission has thus far chosen, as it could, to make its exceptions case-by-case, and we think, as we have indicated, that we can discern the general paths it has followed in this instance, as well as in its other decisions. *See* Colorado Interstate Gas Co. v. FPC, *supra*, 324 U.S. at 595, 65 S.Ct. 829. The question of dual-identification is a minor part of the FCC's work, one in which "busy agency staffs are not expected to dot 'i's' and cross 't's'." WAIT Radio v. F.C.C., *supra*, 418 F.2d at 1156. *See also* National Air Car-

rier Ass'n v. C.A.B., 141 U.S.App.D.C. 31, 436 F.2d 185, 194–195 (1970). For this kind of issue the Commission's decision now under review passes muster in that it reveals and applies an intelligible principle which is reasonable in itself and can be harmonized with the other FCC actions in this field.

Affirmed.[12]

12. After argument, appellant filed a motion to remand to the Commission to reconsider the denial of Sudbrink's application, and then to grant it. The ground of the motion was a reiteration, attempted to be buttressed by a post-argument grant to a Tampa station of the right to identify with St. Petersburg, of the argument already made in the briefs and on oral argument that the Commission's standards are contradictory and have been inconsistently applied. In deciding the appeal we have considered this motion to remand, and now deny it for the reasons indicated in the text.