**RUSSIAN RIVER VINTAGE BROADCASTING,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COMMISSION,**

**John A. Carollo, Jr., Intervenor.**

No. 92–1236.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 14, 1993.

Decided Oct. 8, 1993.

---

Benjamin Perez argued the cause for appellant. With him on the briefs was Robert E. Kelly.

Roberta L. Cook, Counsel, F.C.C. argued the cause for appellee. With her on the brief were Renee Licht, Acting Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, FCC.

Before BUCKLEY, GINSBURG, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

D.H. GINSBURG, Circuit Judge:

Russian River Vintage Broadcasting petitions for review of a Federal Communications Commission order dismissing its application for a new FM station. The FCC dismissed the application on the ground that it did not comply with the agency's published guideline for an acceptable transmitter site map and that the transmitter site map, as submitted, was not adequate to verify the site coordinates. We affirm.

## I. BACKGROUND

Russian River applied for a new FM station in Sebastopol, California. Pursuant to an FCC requirement, *FM Transmitter Site Map Submissions Required by FCC Forms 301 and 340,* 1 FCC Rcd. 381 (1986), *summary published,* 51 Fed.Reg. 45,945, 45,946 (1986), Russian River included in its application a full-scale photocopy of a 7.5 minute U.S. Geologic Survey topographic quadrangle map showing the proposed site for the station transmitter. The map bore the required USGS coordinate markings on its axes, but at least one of the latitude marks was erroneous as a result of an alteration that Russian River made in order to fit the map on a single 11″ by 17″ page.

As part of the standard FCC application review process, the agency staff tried to verify the site coordinates listed in Russian Riv-

er's application by means of linear interpolation using the coordinate markings on the map as submitted. Because the marking on the latitudinal axis was erroneous, the FCC was unable to verify the coordinates stated in the application. *Beth Knight,* 5 FCC Rcd. 3927, 3928–29 (1990). Therefore, in accordance with its "hard look" processing rules, *Processing of FM and TV Broadcast Applications, Report and Order,* 50 Fed.Reg. 19,-936 (1985), *reconsideration denied,* 50 Fed. Reg. 43,157 (1985), *aff'd mem. Hilding v. FCC,* 835 F.2d 1435 (9th Cir.1987), the FCC dismissed the application. (Although the FCC has since relaxed the rigor of its hard look procedures, 7 FCC Rcd. 5074 (1992), it had not done so as of the end of the filing period applicable to Russian River's application.)

Russian River petitioned the FCC for reconsideration on the ground that the agency could independently verify the coordinates of the proposed transmitter site from the submitted map by using a standard 7.5 minute topographic map ruler. The FCC acknowledged that it could verify the site coordinates if measured from the south, but the agency adhered to its original decision because even the topographic ruler would yield a discrepancy if the site coordinates were measured from the north. Therefore, the agency concluded that it could not verify the proposed transmitter site with the degree of confidence required under its regulations. *Russian River Vintage Broadcasting,* 7 FCC Rcd. 2703 (1992). Russian River now appeals to this court.

## II. ANALYSIS

The FCC adopted its "hard look" processing procedures in anticipation of a flood of applications for new FM station licenses. In an effort to expedite their processing, which in the past had been impeded by the necessity to return as incomplete or inaccurate fully 40% of the applications it received, the FCC adopted stringent FM application requirements. *See In the Matter of Amendment of Part 73 of the Commission's Rules to Modify Processing Procedures for Commercial FM Broadcasting Applications,* 7 FCC Rcd. 5074 (1992) (summarizing development of the hard look procedures). For example, by the end of the filing period an application had to be "substantially complete," meaning that it had to include certain specified information that the FCC considered essential in order to process the application and to verify compliance with the agency's technical requirements. Any application that was not substantially complete, or which initially appeared to be complete but was later found to contain inconsistent or unverifiable information, was returned by the FCC as "unacceptable for tender." The FCC would return an application if a defect could not be resolved by the staff "reliably" and "with a high degree of confidence." 50 Fed.Reg. at 19,946. The applicant had no opportunity to correct the defect, 50 Fed.Reg. at 19,945–46 (Appendix D); *see also Malkan FM Assoc. v. FCC,* 935 F.2d 1313, 1316 (D.C.Cir.1991), and an application that had been returned could not be resubmitted.

The processing rules include detailed instructions on the form and purpose of the transmitter site map that each applicant must submit. The site must be clearly and accurately marked on a full-scale 7.5 minute series USGS topographic quadrangle map so that the FCC staff can independently verify the coordinates·of the site listed in the application. The map must "show along the printed margin of both axes at least two coordinate markings, specifically labeled by the USGS, one on either side of the marked site." 51 Fed.Reg. at 45,946.

The instructions also provide for altering a site map so that the site and the margin markings fit on a single page. *Id.* In such a case, the applicant might submit only a section of the map—including preprinted cross-marks or margin sections, each properly labeled with the correct latitude or longitude, so that the staff can verify the transmitter location. In addition, the applicant must submit a reduced copy of the entire map in order to verify that the altered map is properly labeled. *Id.* An application that does not meet these requirements will be "returned without further review."

Russian River submitted a map that did not comply with the published instructions for preparing an application for a new FM station license. Nevertheless, the applicant argues that the FCC acted unreasonably in

returning its application because the agency did not consider an alternative method for verifying the transmitter site location that would have yielded the correct coordinates.

■ The court will require the FCC to reinstate Russian River's application *nunc pro tunc* only if, based upon the entire record, the agency's decision was not a reasonable exercise of its procedural discretion. *See, e.g., Salzer v. FCC,* 778 F.2d 869, 877 (D.C.Cir.1985). We will uphold the decision if we can discern a "reasoned path from the facts and considerations before the Commission to the decision it reached." *Neighborhood TV Co. v. FCC,* 742 F.2d 629, 639 (D.C.Cir.1984). *See also California v. FCC,* 905 F.2d 1217, 1230 (9th Cir.1990).

■ Judged by this standard, the FCC's decision to return the application to Russian River was unquestionably reasonable. The agency had published detailed instructions for preparing a transmitter site map that would not fit on a single page if submitted full size. *See* 51 Fed.Reg. at 45,946. Although Russian River was on notice that failure to use the prescribed method could jeopardize consideration of its application, *see* 50 Fed.Reg. at 19,945; 51 Fed.Reg. at 45,946, it submitted a map that did not comply with those instructions. The map it submitted had invalid and contradictory margin markings so that the agency staff evaluating the application could not reliably verify the coordinates of the proposed transmitter site stated elsewhere in the application.

The staff might have confirmed the site coordinates if it had known that Russian River had altered its map and the staff had accordingly used a topographic ruler. In fact, however, Russian River had so artfully cut and pasted its map that the alteration was known only to it; the staff therefore used another equally valid method of calculating the proposed transmitter site, which yielded the wrong coordinates. Accordingly, the FCC could reasonably conclude that the agency could not "reliably" and "with a high degree of confidence" verify the proposed transmitter site. Therefore, the decision of the FCC to return Russian River's application was not an abuse of discretion.

■ Before this court, Russian River makes other arguments that it did not raise before the FCC. We are foreclosed from considering new arguments on appeal, however. *See* 47 U.S.C. § 405. *See also Alianza Federal de Mercedes v. FCC,* 539 F.2d 732, 739 (D.C.Cir.1976) (FCC must have the opportunity to consider "novel legal or factual arguments" before the court can review those arguments).

### III. CONCLUSION

For the foregoing reasons, the order of the FCC rejecting Russian River's application for a new FM station is

*Affirmed.*