### FLORIDA CELLULAR MOBIL COMMUNICATIONS COR- PORATION, Appellant,

v.

### FEDERAL COMMUNICATIONS COMMISSION, Appellee.

Wendy C. Coleman, Doing Business As WCC Cellular; JAJ Cellular, Intervenors.

No. 92–1664.

United States Court of Appeals, District of Columbia Circuit.

Argued May 10, 1994.

Decided July 15, 1994.

Rehearing and Suggestion for Rehearing In Banc Denied Sept. 28, 1994.

Michael D. Sullivan, argued the cause for appellant. With him on the briefs was Gary Bellow.

Daniel M. Armstrong, Associate Gen. Counsel, Federal Communications Commission, argued the cause for appellee. With him on the brief were William E. Kennard, Gen. Counsel, Jane E. Mago, Asst. Gen. Counsel, and John P. Greenspan, Counsel, F.C.C. John E. Ingle, Deputy Associate Gen. Counsel, and Roberta L. Cook, Counsel, F.C.C., entered an appearance.

John D. Seiver, argued the cause for intervenor Wendy C. Coleman. With him on the brief was James F. Ireland, III.

Harry F. Cole, entered an appearance for intervenor JAJ Cellular.

Before: MIKVA, Chief Judge, SENTELLE, Circuit Judge, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

Florida Cellular Mobil Communications Corporation ("Florida Cellular") appeals from decisions of the Federal Communications Commission ("Commission" or "FCC") that dismissed the company's application for a license to construct and operate a cellular communications system in southern Maryland and along Maryland's Eastern Shore. The Commission dismissed the application as "unacceptable for filing" because one of Florida Cellular's shareholders held an interest in

a competing applicant in violation of the FCC's multiple ownership regulations. Because the regulations clearly provided that multiple ownership interests in competing applicants were prohibited, and Florida Cellular was on notice that its application was subject to dismissal for non-compliance with FCC regulations, we affirm the Commission's decisions.

## I. BACKGROUND

In the early 1980's the Commission established procedures to determine which applicants would be issued licenses to construct and operate cellular communications systems in the larger metropolitan areas within the United States. The Commission refers to these areas as Metropolitan Service Areas. The Commission permitted parties to these applications to have multiple ownership interests of less than 1% in competing applicants in order to provide some latitude for the parties to form business relationships. *Cellular Lottery Order*, 98 F.C.C.2d 175, 217–18 (1984), *recon.*, 101 F.C.C.2d 577 (1985), *further recon.*, 59 Rad.Reg.2d (P & F) 407 (1985). The procedures adopted by the Commission allow for licenses to be issued to two carriers within each of the Service Areas, with one license reserved for "wireline" carriers (telephone companies) and the other reserved for "nonwireline" carriers (applicants other than telephone companies).

In order to streamline the licensing process and to provide cellular service to the public in a more timely manner, the Commission has since 1984 selected the tentative licensee from among competing applicants through a lottery, as authorized by section 309(i) of the Communications Act, 47 U.S.C. § 309(i) (1988), rather than through competitive hearings. Each facially complete application is qualified to be included in a lottery for a particular Service Area license upon the applicant's certification that the application is complete and contains all the information required by the application form and the FCC regulations. *Cellular Lotteries Further Reconsideration Order*, 59 Rad.Reg.2d (P &

F) 407, 410 & n. 16 (1985). To speed the selection process, however, once the application is filed, the FCC rules prohibit applicants from filing amendments to their applications until the lottery produces the tentative selectee for the relevant market.[1] *Cellular Lottery Order*, 98 F.C.C.2d 175, 220 (1984); 47 C.F.R. § 22.918(b) (1993). Once filed, the Commission does not review the applications further until the lottery is completed.

When the lottery produces a tentative selectee, the Commission reviews only the selected application to determine whether it is "acceptable for filing," *i.e.*, whether it complies with the FCC procedural and substantive rules and regulations. 47 C.F.R. § 22.-20(a)(2) (1993). One of the Commission's principal cellular rulemaking orders states that "the tentative selectee's application will be carefully reviewed to ensure its compliance with the cellular application standards and will be dismissed for failure to do so." *Cellular Lotteries Further Reconsideration Order*, 59 Rad.Reg.2d (P & F) 407, 410 (1985). The FCC rules also provide:

(a) Unless the Commission shall otherwise permit, an application will be unacceptable for filing and will be returned to the applicant ... if:

(2) The application does not comply with the Commission's rules, regulations, specific requirements for additional information or other requirements.

47 C.F.R. § 22.20(a)(2) (1993). If it determines that the application is acceptable, the Commission provides public notice as to the identity of the tentative licensee. Competing applicants are then entitled to challenge the application of the tentative licensee by filing petitions to deny the application.

In 1985, the Commission established procedures for processing applications for cellular licenses in the remaining areas of the country, the so-called Rural Service Areas. Although most of the procedures established for the Metropolitan Service Area application process applied, the Commission's experience

---

**1.** Once the lottery is complete, the tentative selectee is permitted to file certain minor amend-

ments. 47 C.F.R. § 22.918(b) (1993).

in processing the applications for the Metropolitan Service Areas convinced the Commission to change some of the regulations for the processing of the applications for the Rural Service Areas. The Commission amended its regulations concerning partial settlements, multiple ownership interests in more than one applicant for the same Rural Service Area license, and transfers of interests in Rural Service Area applications. *See Amendment of the Commission's Rules for Rural Cellular Service*, 64 Rad.Reg.2d (P & F) 1382, 1383 (1988) [hereinafter *"Cellular Amendment"*]. The Commission found that allowing multiple ownership interests of less than 1% in competing cellular applications encouraged applicants to enter into partial settlements[2] whereby the applicants made mutual promises to convey a portion of their interests to other members of the settlement group upon being selected as the tentative selectee. In turn these partial settlements delayed the inauguration of service to the public because they encouraged losing applicants to file petitions to deny the winning applications alleging that the tentative selectees were not the real parties in interest. To prevent this delay in inaugurating cellular service in the Rural Service Areas, the Commission adopted 47 C.F.R. § 22.921 which in relevant part provides:

> For Rural Service Areas, no party to a non-wireline application shall have an ownership interest, direct or indirect, in more than one application for the same Rural Service Area, including an interest of less than one percent.

47 C.F.R. § 22.921(b) (1993). The Commission also acted to prevent the delay associated with the pre-licensing transfer or assignment of cellular applications. Noting that such transfers required the Commission to restart the application processing cycle and to issue a new public notice which "results in the disruption of orderly processing, slows the initiation of service to the public, and is

not in the public interest," *Cellular Amendment*, 64 Rad.Reg.2d at 1387, the Commission also adopted 47 C.F.R. § 22.922 which at the relevant time provided:

> Notwithstanding any other section of this Part, the sale, transfer, assignment or other alienation of any cellular application to offer service to Rural Service Areas is prohibited prior to the grant of a construction authorization. This restriction on transfers of interests in such cellular applications shall include any form of alienation, including option arrangements and agreements, as well as equity and debt placement plans.

47 C.F.R. § 22.922(a) (1988).

## II. FACTS

Florida Cellular was organized in 1983 for the purpose of filing applications to provide cellular service in seven of the Metropolitan Service Areas. Yerger Yandell was one of the company's original shareholders, having paid $10,000 for an 0.85% interest in Florida Cellular. Although the company had hired counsel to prepare and file the applications, no applications were ever filed on Florida Cellular's behalf for these areas. In 1984, Mr. Yandell moved to a new residence without notifying the company of his new address, apparently believing that the company was defunct.

Although Florida Cellular began mailing periodic notices to its shareholders in 1984, Mr. Yandell did not receive any of these notices, and at least one was returned to the company marked "Unable to deliver—no forwarding address." In 1987, Florida Cellular reached a settlement with the attorney it had hired to prepare and file its Metropolitan Service Area applications whereby the attorney agreed to prepare and file 125 applications for the Rural Service Areas on behalf of the company.

2. The Commission described a "partial settlement" as:

any arrangement among fewer than all of the applicants in a market that provides any reciprocal interests in the applications of the parties to the arrangement. The term includes the so-called "alliance agreements" whereby each

participant in the alliance agrees that if it wins a particular market it will retain at least 50.1% of the application and that the other members of the alliance will each obtain a maximum interest of 0.99% in the winning application. *Cellular Amendment*, 64 Rad.Reg.2d at 1383 n. 3.

Many of the notices that Florida Cellular sent to its shareholders in 1988 involved the company's intent to file applications for the Rural Service Areas. These notices also apprised the shareholders of the Commission's new rules for the filing of these applications, including the rule prohibiting the ownership of interests in competing applicants.

The Maryland 2 market, comprised of much of southern Maryland and the Eastern Shore, was among the Rural Service Areas for which Florida Cellular filed an application. Kudzu Cellular Partnership ("Kudzu"), a company in which Mr. Yandell owned a 5% interest, also filed an application for this area. When the lottery was conducted on November 22, 1989, Florida Cellular was selected as the tentative selectee. Following its selection, Florida Cellular updated its shareholder mailing list and obtained Mr. Yandell's new address. In a letter dated December 21, 1989, the company notified its shareholders, including Mr. Yandell, that it had been selected in the lottery for the Maryland 2 market. Mr. Yandell thereafter notified the company of his interest in Kudzu.

Before the Commission issued its public notice designating Florida Cellular as the tentative selectee for the Maryland 2 market, counsel for Mr. Yandell and Florida Cellular informally disclosed Mr. Yandell's dual interests to the Commission. On March 26, 1990, the Commission issued the public notice naming Florida Cellular as the tentative selectee for the Maryland 2 market, and, on that same date, a Commission staff member apparently notified the company that, in the absence of a petition to deny Florida Cellular's application, Mr. Yandell's dual interest would likely not be disqualifying provided that he was removed from one of the applications.

Florida Cellular, claiming that the multiple ownership violation was inadvertent and minor, subsequently petitioned the Commission for a waiver of 47 C.F.R. § 22.922, which would permit the company to repurchase Mr. Yandell's stock and bring its application into compliance with 47 C.F.R. § 22.921. Before the Commission acted on this petition, a losing applicant, JAJ Cellular Partnership ("JAJ"), filed a petition to deny the application, claiming that the proposal to repurchase the stock might allow Mr. Yandell to realize a substantial profit. In response to JAJ's petition, Florida Cellular submitted an executed agreement that allowed the company to repurchase Mr. Yandell's stock at his original purchase price.

The Mobile Services Division of the Commission's Common Carrier Bureau dismissed the applications of both Florida Cellular and Kudzu on January 18, 1991. The decision stated that Florida Cellular's application was defective at the time it was filed and noted that such a defective application could not be amended to bring it into compliance with Commission rules. *Florida Cellular Mobile Communication Corp.,* 6 F.C.C.R. 354, 355 (Mob.Serv.Div.1991). Florida Cellular filed a petition for reconsideration claiming that "a policy decision ... to reject all non-wireline [Rural Service Area] applications that violate any rule, without independently considering the facts of each case[, a]lthough administratively convenient, ... would be wholly arbitrary and contrary to the public interest." App. at 130. The Commission, noting that "[a] rule such as Section 22.921 could not be efficiently applied if a fact-specific analysis of intent were required in particular cases," *Florida Cellular Mobil Communications Corp.,* 6 F.C.C.R. 6910, 6910 (1991), denied the company's petition for reconsideration. On December 1, 1992 the Commission denied the company's second petition for reconsideration, stating that "[Florida Cellular's] responsibility to keep its stockholders advised of matters that could lead to violation of Section 22.921, and Yandell's responsibility to comply with Section 22.921 each establish a duty which, with reasonable exercise of diligence, could have avoided violation of Section 22.921 and application dismissal." *Florida Cellular Mobile Communications Corp.,* 7 F.C.C.R. 7856, 7857 n. 6 (1992). Following the Commission's denial of its second petition for reconsideration, Florida Cellular filed this appeal.

## III. DISCUSSION

Florida Cellular advances three arguments to support its contention that the Commis-

sion improperly dismissed its application. First, Florida Cellular asserts that the Commission's application of its multiple ownership rules was arbitrary and capricious. Second, the company contends that the Commission's refusal to grant a waiver to Florida Cellular constituted an abuse of discretion. And finally, the company contends that the Commission denied it due process of law. We will first discuss the appropriate standard of review to be applied, and then we will address each of these arguments in turn.

## A. The Standard of Review

■ Typically, we approach decisions based on an agency's interpretation of its governing statute and its regulations with all due deference. *See Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1985). Florida Cellular suggests that the court should apply heightened scrutiny to the Commission's actions under review in this case because the Commission has changed its rules and policies regarding multiple ownership interests in competing cellular applicants. The company implies that these changes indicate "that the agency has not really taken a 'hard look' at the salient problems, and has not genuinely engaged in reasoned decision-making." *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C.Cir.1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971) (footnote omitted).

If an agency is to function effectively, however, it must have some opportunity to amend its rules and regulations in light of its experience. As this court has recently stated, "the fact that an agency rule represents a change in course simply requires courts to make sure that prior policies are being deliberately changed, not casually ignored, and that the agency has articulated permissible reasons for that change." *Clinton Memorial Hosp. v. Shalala*, 10 F.3d 854, 859 (D.C.Cir. 1993) (citations and internal quotation marks omitted).

When the Commission adopted the new rules that were to govern the licensing process for the Rural Services Areas, it issued a report explaining the reasons behind these changes. According to the report, the Com-

mission "concluded, after carefully reviewing all comments filed in this proceeding and our experiences in processing the approximately 100,000 [Metropolitan Service Area] applications, that prohibiting non-wireline partial settlements would be in the public interest." *Cellular Amendment*, 64 Rad.Reg.2d at 1385. This report describes a number of problems in the processing of the Metropolitan Service Area applications that could be traced to the partial settlements. These problems included increased litigation and subsequent delay of construction authorizations, the filing of applications by non-*bona fide* applicants, and the filing of petitions to deny the winning application, questioning whether a winning applicant was the real party in interest. *Id.*

As far as the multiple ownership rules were concerned, the report states:

> The 1% exception provided a basis in many markets for hundreds of applicants to enter partial settlements or alliances and then, if they became tentative selectee, to dilute their interests pursuant to the agreements that they signed with marketeers of applications. Parties filed petitions to deny alleging that such tentative selectees were not the real party in interest in their applications. Those petitions delayed the authorizations. Therefore, consistent with our ban on non-wireline partial settlements, we find no justification for retention of the multiple ownership exception for the non-wireline applicants.

*Id.* at 1387 (footnotes omitted). This analysis demonstrates that the Commission did not "casually ignore" its prior policy concerning partial settlements, multiple ownership interests, and pre-authorization transfers of interests in cellular applications, but instead, deliberately changed it. Furthermore, the avoidance of the processing problems and service delays caused by these factors is certainly a permissible reason for the change, especially given this Court's prior admonition "that it is high time to move cellular telephone services from the FCC's regulatory process to the marketplace. To ignore this point would be to ignore Congress' fundamental mandate to the FCC to make communications systems available to the public." *MCI Cellular Tel. Co. v. FCC*, 738 F.2d 1322,

1328–29 (D.C.Cir.1984) (citing 47 U.S.C. § 151 *et seq.* (1988)).

■ The rule changes that the Commission made in this case were a reasonable response to the problems that the Commission experienced in processing applications and granting licenses for the Metropolitan Service Areas. Such changes do not indicate that the Commission acted with the kind of "mindless inconsistency and equivocation that signals arbitrariness." *Telocator Network of Am. v. FCC,* 691 F.2d 525, 540 (D.C.Cir.1982). Therefore, we reject Florida Cellular's suggestion that the rule changes make it appropriate to apply "heightened scrutiny" to the Commission actions that the company is challenging on this appeal.

### B. The Commission's Dismissal of Florida Cellular's Application

■ Florida Cellular raises a number of points in arguing that the Commission's dismissal of its application was arbitrary and capricious. Florida Cellular contends that the Commission cannot reasonably read its rules in such a way that the Commission can hold the company responsible for Mr. Yandell's actions. This argument simply misconstrues the motive behind the Commission's actions in this case. The Mobile Services Division dismissed Florida Cellular's application after finding that the company had filed a defective application. *See Florida Cellular Mobile Communication Corp.,* 6 F.C.C.R. at 355. It was the applicant's responsibility to ensure that the application it submitted was complete and complied with the FCC substantive and procedural rules. When the application was submitted, an authorized representative of Florida Cellular was required to certify to the following:

> I hereby certify, under penalties of perjury, this application for an initial cellular authorization is complete in every respect and contains all of the information required by FCC Form 401 and the Commission's cellular application rules. I acknowledge that if, upon Commission inspection, this certification is shown to be incorrect, this application shall be dismissed without further consideration.

47 C.F.R. § 22.923(b)(7) (1993). The Commission also stated that Florida Cellular could have avoided a violation of § 22.921 and application dismissal if it had exercised reasonable diligence in performing its responsibility to keep its stockholders advised of matters that could lead to violations. *See Florida Cellular Mobile Communications Corp.,* 7 F.C.C.R. at 7857 n. 6. Although Mr. Yandell's dual interests caused the violation, the Commission could properly dismiss the application for Florida Cellular's failure to file an application that complied with the FCC rules, an act that was the company's responsibility to perform.

■ Florida Cellular also alleges that the Commission acted arbitrarily and capriciously because the Commission dismissed the company's application without considering "what sanction is most appropriate, given the facts of the case and the purpose that the rule is intended to serve." Appellant's Br. at 32. We must reject this argument. When reviewing agency decisions, this court does not require agencies to justify their actions as the "most appropriate" under the circumstances. Under the Administrative Procedure Act, we must affirm an agency's orders unless they are arbitrary, capricious, an abuse of discretion, or not in accordance with the law. 5 U.S.C. § 706(2)(A) (1988). The scope of review under this standard is "narrow," and a reviewing court is not to substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983). The court's duty is to ensure that the Commission has "examined the relevant data and articulated a satisfactory explanation for its action," *id.* at 43, 103 S.Ct. at 2866, based on the materials that were before the Commission at the time its decision was made.

■ In this case the Commission decided to dismiss an application that it found to be "unacceptable for filing" because a shareholder's dual ownership interests in competing applicants violated the FCC rules. On a number of prior occasions when the Commission has promulgated "hard look" rules for the purposes of expediting the processing of applications and of providing a quick, simple

method of selecting a prospective licensee, we have upheld the Commission's dismissal of an application that violated one of the FCC's technical rules as a proper exercise of the Commission's discretion. *See Moving Phones Partnership L.P. v. FCC*, 998 F.2d 1051, 1057 (D.C.Cir.1993) (upholding the FCC's dismissal of applications for cellular licenses because applying partnerships included aliens among their general partners in violation of the Communications Act), *cert. denied,* —— U.S. ——, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994); *Russian River Vintage Broadcasting v. FCC*, 5 F.3d 1518, 1521 (D.C.Cir.1993) (upholding FCC's dismissal of application for FM radio station license for failure to provide verifiable transmitter site information); *Malkan FM Assocs. v. FCC*, 935 F.2d 1313, 1320 (D.C.Cir.1991) (upholding FCC's dismissal of an application for FM radio station license for failure to comply with antenna height limits). The Commission's rules and orders put the applicants on notice that their applications would be subject to dismissal for failure to comply with the FCC procedural and substantive rules. *See supra* at 193. Therefore, we find that the Commission did not act arbitrarily or capriciously in dismissing Florida Cellular's application for its failure to comply with the Commission's "hard look" cellular application rules concerning multiple ownership interests. Because the dismissal was neither arbitrary nor capricious, the decision to dismiss was one properly within the Commission's discretion, and we will not substitute our judgment to determine whether this sanction was the "most appropriate."

■ Florida Cellular also argues that its application should be reinstated because the Commission "gave no notice that applications would be subject to dismissal as unacceptable for filing for minor passive shareholders' unintentional multiple application interests." Appellant's Br. at 34. What this court has stated in addressing similar arguments in the context of applications for licenses to build and operate FM radio stations applies here with equal force. In *Glaser v. FCC*, 20 F.3d 1184, 1186 (D.C.Cir.1994), the court stated that "[t]here can be no doubt of the FCC's authority to impose strict procedural rules in order to cope with the flood of applications it

receives or expects to receive." *See also JEM Broadcasting Co. v. FCC*, 22 F.3d 320, 329 (D.C.Cir.1994). However, when the Commission does impose such strict procedural rules, "fundamental fairness ... requires that an exacting application standard, enforced by the severe sanction of dismissal without consideration on the merits, be accompanied by full and explicit notice of all prerequisites for such consideration." *Salzer v. FCC*, 778 F.2d 869, 871–72 (D.C.Cir.1985). As far as the cellular applications are concerned, the Commission promulgated a rule prohibiting multiple ownership interests in competing applicants, including ownership interests of less than 1%. The notices that Florida Cellular sent to its shareholders indicate conclusively that the company had actual notice of this rule. *See supra* at 194. The Commission's rules and orders also provided notice that applications would be subject to dismissal for failure to comply with the FCC rules and regulations. As the court stated in *JEM Broadcasting*, Florida Cellular "was entitled to no more than this clear and explicit notice." 22 F.3d at 329. The Commission need not supply a separate "shopping list" specifying that each separate rule violation may lead to dismissal. It is enough that the FCC rules are clearly spelled out and applicants are on notice that their applications are subject to dismissal for failure to comply with these rules.

## C. The Commission's Refusal to Grant Florida Cellular a Waiver

■ Florida Cellular next argues that the Commission abused its discretion when it denied the company's request for a waiver of 47 C.F.R. § 21.922 that would have permitted the company to repurchase Mr. Yandell's shares. Generally, "[w]hen an applicant seeks a waiver of a rule, it must plead with particularity the facts and circumstances which warrant such action." *Rio Grande Family Radio Fellowship, Inc. v. FCC*, 406 F.2d 664, 666 (D.C.Cir.1968). When such a request is "stated with clarity and accompanied by supporting data, [it is] not subject to perfunctory treatment, but must be given a 'hard look.' " *WAIT Radio v. FCC*, 418 F.2d 1153, 1157 (D.C.Cir.1969). However, a party

challenging the Commission's refusal to grant a waiver "must show that the agency's reasons for declining the waiver were 'so insubstantial as to render that denial an abuse of discretion.'" *Thomas Radio Co. v. FCC,* 716 F.2d 921, 924 (D.C.Cir.1983) (quoting *Sudbrink Broadcasting, Inc. v. FCC,* 509 F.2d 418, 422 (D.C.Cir.1974)). Furthermore, the FCC rules provide:

> Waivers will not be granted except upon an affirmative showing:
>
> (i) That the underlying purpose of the rule will not be served, or would be frustrated, by its application in a particular case, and that grant of the waiver is otherwise in the public interest; or
>
> (ii) That the unique facts and circumstances of a particular case render application of the rule inequitable, unduly burdensome or otherwise contrary to the public interest. Applicants must also show the lack of a reasonable alternative.

47 C.F.R. § 22.19(a)(i)-(ii) (1993).

Florida Cellular argued that the underlying purpose of 47 C.F.R. § 22.922, namely, to prevent speculation in cellular applications, would not be served by applying the rule in this case because Mr. Yandell's multiple ownership interests were acquired inadvertently and the repurchase of his stock was merely an effort to achieve complete compliance with the rules. Opposition to Petition to Dismiss or Deny of JAJ Cellular Partnership, May 24, 1990, at 11–12 [hereinafter "Opposition"]; Request for Waiver of Section 22.922 of the Commission's Rules, April 24, 1990, at 5 [hereinafter "Request"]. The company also argued that the inadvertence with which Mr. Yandell acquired the cross interests would render application of the rule inequitable. Opposition at 12. Finally, the company stated that the waiver would be in the public interest because it would not delay processing of Florida Cellular's application and would expedite the initiation of Block A (non-wireline) cellular service in the Maryland 2 market. Opposition at 12–13; Request at 6–7.

 The Commission rejected these arguments. In its original order, the Mobile Services Division simply stated that it would not consider the request for a waiver because the company's arguments in support of a waiver were insufficient to overcome the Commission's strict policy to comply with § 22.921. *See Florida Cellular,* 6 F.C.C.R. at 355. On Florida Cellular's petition for reconsideration, the Commission stated that the company's claim that the violation of § 22.921 was inadvertent did not satisfy either test set out in § 22.19. The Commission first noted that "[Florida Cellular] has made no showing that it took sufficient affirmative steps to ensure that none of its shareholders had filed another application." *Florida Cellular,* 6 F.C.C.R. at 6910. The Commission also found:

> if a fact-specific analysis of intent were required in particular cases[, t]his would slow implementation of service to the public, contrary to the public interest. Moreover, inadvertent rule violations are hardly unique. Waiving rules for inadvertent violations would seriously undercut general compliance and enforcement efforts. Administrative efficiency and fundamental fairness to those who comply with the provisions of this rule mandates stringent compliance.

*Id.* Finally, the Commission stated:

> waivers of Section 22.922 generally involve cases in which a carrier would technically violate the rule prohibition by its engagement in a legitimate business transaction totally unrelated to the filing of the cellular application, a situation not presented here.... The subject case does not present a factual predicate for such a waiver.

*Id.* Although the Commission did amend its rules to prevent speculation in cellular applications, it also acted to prevent the delay associated with multiple ownership interests and pre-authorization transfers of cellular applications. It is clear from the orders that the Commission refused to grant Florida Cellular a waiver to promote this second rationale. As we have found that "the avoidance of the processing problems and service delays caused by [partial settlements, multiple ownership interests, and pre-authorization transfers] is certainly a permissible reason for the [policy] change," *supra* at 196, the Commission was justified in relying on

this rationale to deny Florida Cellular's petition for a waiver.

The analysis within the Commission's order denying Florida Cellular's petition for reconsideration shows that the Commission did not subject the company's waiver request to "perfunctory treatment." Instead, the Commission considered Florida Cellular's arguments in light of the purposes the FCC rules were designed to serve and concluded that the facts did not present a situation where it would be appropriate to grant a waiver. The Commission found that granting waivers for inadvertent violations would hinder the administrative process and would slow the provision of service to the public. Given the fact that the cellular licensing process was streamlined to prevent the administrative delays that ultimately resulted in service delays, we cannot say that the Commission's reasons for denying the waiver in this case were "so insubstantial as to render that denial an abuse of discretion."

### D. Florida Cellular's Due Process Claims

Florida Cellular contends that the Commission denied it due process of law by irrebuttably presuming that the company controls the actions of its shareholders and that the company acted with speculative intent, and by holding the company vicariously liable for the acts of a shareholder without control. These arguments must also be rejected.

Florida Cellular claims that one due process violation occurred when the Commission denied Florida Cellular a meaningful opportunity to be heard with regard to whether the company had a specific intent to violate the FCC's multiple ownership rules. However, Florida Cellular failed to cite any authority for the proposition that an agency may only act to correct a violation of its rules upon a finding that the party acted with specific intent to violate the rule. This due process argument simply restates in constitutional terms the notice argument that we rejected *supra* at III.B. This claim must fail for the same reasons. *See supra* at 198; *see also JEM Broadcasting Co. v. FCC*, 22 F.3d 320, 328–29 (D.C.Cir.1994).

Florida Cellular contends that another due process violation occurred when the Commission held the company vicariously liable for Mr. Yandell's dual interests. The company argues that it violates due process to hold an entity responsible for a violation unless the entity knew of the violation, participated in it, ratified it, or controlled the actions which resulted in the violation. Nevertheless, the Commission did not find Florida Cellular completely blameless for the violation. At least one notice that the company sent to Mr. Yandell was returned to the company marked "Unable to deliver—no forwarding address." Therefore, the company should have been aware that it had lost contact with Mr. Yandell. It is also undisputed that the company was able to locate Mr. Yandell's proper address when it updated its shareholders list after it won the lottery for the Maryland 2 market. In light of these facts, the Commission could conclude that the company's failure to exercise due diligence in keeping track of its shareholders was at least partly to blame for the rules violation that resulted in the dismissal of Florida Cellular's application.

On a number of occasions this court has found that the Commission could properly require an applicant to show that it acted with due diligence before allowing the applicant to file an amendment to bring a license application into compliance with FCC rules. *See Pontchartrain Broadcasting Co. v. FCC*, 15 F.3d 183, 184 (D.C.Cir.1994); *Marin TV Servs. Partners, Ltd. v. FCC*, 936 F.2d 1304, 1306 (D.C.Cir.1993); *Royce Int'l Broadcasting Co. v. FCC*, 820 F.2d 1332, 1336 (D.C.Cir. 1987). We find that, for due process purposes, the Commission may also properly dismiss an application that does not comply with FCC rules when the applicant's lack of due diligence was at least partly to blame for the failure to comply. We therefore reject Florida Cellular's second due process argument.

Finally, Florida Cellular claims that the Commission should not have dismissed its application because Mr. Yandell was not a "party to the application," and therefore the company was not in violation of the multiple ownership rule. The court is foreclosed from

considering this argument, however, because Florida Cellular did not raise it before the Commission. *See* 47 U.S.C. § 405 (1988) ("The filing of a petition for reconsideration shall not be a condition precedent to judicial review of any such order ... except where the party seeking such review ... (2) relies on questions of fact or law upon which the Commission ... has been afforded no opportunity to pass."); *see also Russian River Vintage Broadcasting,* 5 F.3d at 1521; *Alianza Federal de Mercedes v. FCC,* 539 F.2d 732, 739 (D.C.Cir.1976) ("The Commission must be given a fair opportunity to pass on a novel legal or factual argument, either initially or on a petition for reconsideration, before it can be brought before a reviewing court.") (footnote omitted).

## IV. CONCLUSION

The Commission rules for the nonwireline Rural Service Area licensing process clearly prohibited multiple ownership interests in competing applicants. The Commission's rules and orders also provided adequate notice that applications would be subject to dismissal for failure to comply with the FCC rules. The application that Florida Cellular submitted for the Maryland 2 market did not comply with the FCC's rules prohibiting multiple ownership interests in competing applicants for the same Rural Service Area license. Therefore, because the Commission may properly exercise its discretion to dismiss an application for failure to comply with a clearly stated rule, the Commission's orders dismissing Florida Cellular's application and denying Florida Cellular's petition for waiver are

*Affirmed.*